The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 3, 2024

**2024COA107**

**No. 23CA0792 & 23CA2021, *In re Marriage of Pawelec* — Family Law — Motion to Modify Arbitrator's Award — De Novo Hearing — Fees and Costs**

Section 14-10-128.5(2), C.R.S. 2024, allows a party who has previously consented to arbitration of disputed parenting matters to "move the court to modify the arbitrator's award pursuant to a de novo hearing." If the court grants the motion and "substantially upholds" the arbitrator's decision, the party who requested the de novo hearing "shall be ordered to pay the fees and costs of the other party . . . incurred in responding to" the motion "unless the court finds that it would be manifestly unjust." *Id.*

A division of the court of appeals holds that a court "substantially upholds" the arbitrator's decision if it reaches a substantially similar outcome, regardless of whether the court's reasoning differs from the arbitrator's.

The division also holds that "fees and costs . . . incurred in responding to" the motion for a de novo hearing (1) do not include fees and costs incurred before the motion for a de novo hearing is filed but (2) do include fees and costs incurred in preparing for and attending the de novo hearing after the motion is granted.

COLORADO COURT OF APPEALS                                    **2024COA107**

Court of Appeals Nos. 23CA0792 & 23CA2021
Eagle County District Court No. 22DR93
Honorable Rachel J. Olguin-Fresquez, Judge

In re the Marriage of

Christopher Paul Pawelec,

Appellee,

and

Katarzyna Julia Pawelec,

Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LUM
Harris and Taubman*, JJ., concur

Announced October 3, 2024

Howard & Associates, LLC, Kara Noack, Vail, Colorado, for Appellee

Courtney Holm & Associates, AAL PC, Courtney Autumn Holm, Edwards,
Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In these consolidated appeals, Katarzyna Julia Pawelec (mother) appeals the trial court's permanent orders entered in connection with the dissolution of her marriage to Christopher Paul Pawelec (father).

¶ 2     Mother's appeal involves the application of an unusual statutory procedure.  Section 14-10-128.5(2), C.R.S. 2024, allows a party who has previously consented to arbitration of disputed parenting matters to "move the court to modify the arbitrator's award pursuant to a de novo hearing."  If, after the hearing, the court substantially upholds the arbitrator's decision, the party who requested the de novo hearing "shall be ordered to pay the fees and costs of the other party . . . incurred in responding to" the motion, unless the court finds that the award of fees would be manifestly unjust.  *Id.*

¶ 3     Mother's contentions require us to examine, for the first time, (1) whether a court "substantially upholds" the arbitrator's decision if it reaches a substantially similar outcome but its reasoning differs from the arbitrator's and (2) the appropriate scope of the fees and costs awarded under the statute.

¶ 4     We answer the first question in the affirmative.  And we conclude that "fees and costs . . . incurred in responding" to the motion for a de novo hearing include the fees and costs incurred in preparing for and attending the de novo hearing; however, they do not include fees and costs incurred before the motion for a de novo hearing is filed.

¶ 5     Mother also raises contentions regarding jurisdiction, due process, parenting time, child support, notice, and the form of the decree of dissolution of marriage.  Both parties request appellate attorney fees.

¶ 6     We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I.     Background

¶ 7     The parties married in 2017 and are the parents of one minor child, S.P.

¶ 8     After five years of marriage, father petitioned for dissolution. The parties entered into a separation agreement regarding property division and agreed to arbitrate the remaining unresolved issues of parenting time, decision-making, child support, and spousal

maintenance.  During the arbitration, mother did not raise any allegations of domestic violence.

¶ 9    The arbitrator awarded the parties joint decision-making and named father, who planned to move from Colorado to North Carolina following the dissolution, as the primary residential parent.  The arbitrator also entered orders concerning child support and spousal maintenance.

¶ 10    Mother moved for a de novo hearing to modify the arbitrator's award as to parenting time under section 14-10-128.5.  In her motion, she alleged that father had engaged in a "recurring pattern of control and abuse, both emotional and physical," which led her to "withhold[] pertinent information" from the arbitrator.  After a case management conference, the trial court granted mother's motion and set a one-day hearing.

¶ 11    The de novo hearing took place in February 2023.  After the hearing, the trial court entered an oral order awarding the parties joint decision-making, based on their agreement to that at the hearing, and finding that it was in the child's best interests to reside primarily with father when he relocated to North Carolina

3

(oral parenting time order). Mother moved for reconsideration, which the court denied in a written, signed order.

¶ 12     Because the trial court upheld the arbitrator's parenting time decision, father moved for attorney fees and costs under section 14-10-128.5(2). The court granted father's motion.

¶ 13     Mother appealed the oral parenting time order, the denial of the motion to reconsider, and the attorney fees order in Case No. 23CA0792 (the first appeal).

¶ 14     Some months later, father filed proposed written orders concerning parental responsibilities, child support, and spousal maintenance, along with a transcript of the oral parenting time order and a proposed decree of dissolution of marriage. The trial court signed father's proposed orders between October 5 and October 9, 2023 (October 2023 orders). Mother separately appealed those orders in Case No. 23CA2021 (the second appeal). We consolidated the appeals and now address mother's contentions together.

¶ 15     We first consider mother's threshold contentions that the trial court lacked jurisdiction to enter the October 2023 orders and violated her due process rights at the de novo hearing. We then

4

address mother's substantive arguments relating to the parenting time, attorney fees, and child support orders. Finally, we consider mother's miscellaneous contentions related to the October 2023 orders and the parties' requests for appellate attorney fees.

## II.    Jurisdiction

¶ 16    Mother contends that the trial court lacked jurisdiction to enter the October 2023 orders because, at that time, mother's first appeal was pending. Reviewing the question de novo, *see McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 33, we disagree.

## A.    Applicable Law

¶ 17    When a party files a notice of appeal from a final judgment, the trial court is divested of jurisdiction "with regard to the substantive issues that are the subject of the appeal." *Molitor v. Anderson*, 795 P.2d 266, 268 (Colo. 1990). But when a party files a premature notice of appeal — an appeal from a judgment that isn't final — the trial court doesn't lose jurisdiction. *Musick v. Woznicki*, 136 P.3d 244, 246 (Colo. 2006). A final judgment is one that "ends the proceeding in which it is entered and leaves nothing further to be done regarding the rights of the parties." *In re Marriage of Salby*, 126 P.3d 291, 294 (Colo. App. 2005).

5

## B.    Analysis

¶ 18    The parties' dissolution of marriage action involved issues pertaining to property division, spousal maintenance, child support, parenting time, and decision-making.  When mother filed her first appeal, the trial court had entered the following relevant orders:

- the oral parenting time order;

- the order denying mother's motion to reconsider;

- the order granting father's request for attorney fees under section 14-10-128.5; and

- an order (1) confirming the arbitrator's award of spousal maintenance; (2) adopting the parties' stipulation as to their incomes for purposes of calculating child support; and (3) implicitly adopting the parties' stipulation that the separation agreement regarding property division "shall be adopted into a Decree of Dissolution of Marriage."[1]

---

[1] We note that, while the October 2023 dissolution decree has a checked box indicating that the court entered "permanent orders" — meaning the orders that were issued after arbitration and after the de novo hearing — it did not check the box incorporating the property division separation agreement into the decree.  This appears to be a clerical error.

6

¶ 19    But those orders weren't sufficient to completely determine the rights of the parties: the trial court hadn't entered a written parenting time order, orders regarding child support, or a decree of dissolution of marriage.  Accordingly, mother's first notice of appeal was premature because the judgment wasn't final when she filed it. *See Salby*, 126 P.3d at 295 (holding that a parenting time order wasn't appealable until the court had entered the decree of dissolution of marriage and permanent orders regarding financial matters).

¶ 20    For this reason, we conclude that the trial court had jurisdiction to enter the October 2023 orders.  *See Musick*, 136 P.3d at 246.  And because those orders rendered the judgment final, we have jurisdiction to consider the contentions raised in mother's first appeal.  *See id.* at 246-47.

### III.    Procedural Due Process

¶ 21    Mother contends that the trial court violated her procedural due process rights at the de novo hearing by not allowing her to present additional evidence beyond her allotted time.  We disagree.

## A. Additional Facts

¶ 22     On November 29, 2022, the trial court held a case management conference to discuss mother's motion for a de novo hearing. Mother was unrepresented at the time. The court asked father's counsel how much time would be required. Father's counsel asked for a full day to "err on the side of caution." Mother didn't object or ask for additional time. The court then asked both parties if there were any questions, to which mother replied, "No." The court set a one-day hearing for February 7, 2023. On December 8, 2022, mother's counsel entered his appearance. He didn't seek a continuance or request more time for the hearing.

¶ 23     Seven days before the hearing, the parties submitted a joint trial management certificate in which they acknowledged that the hearing was scheduled for one day and estimated the amount of time they would need for each witness. Mother and father each estimated approximately three and a half hours for their respective witnesses, each reserving any necessary time for cross-examination. Again, mother's counsel didn't request more time.

¶ 24     Each party was given approximately equal time at the hearing, with mother presenting her case first. Mother testified, as did

maternal grandmother and mother's domestic violence expert witness. Father testified about his parenting and his planned move to North Carolina. He also called multiple family members, friends, and neighbors to testify on his behalf.

¶ 25 During the hearing, the court informed mother's counsel that his time was up and asked if he had more witnesses. Mother's counsel said, "[W]ell, I have four but I can get away with calling two." After the court indicated that it was unlikely they would have time for the witnesses, mother's counsel responded, "Certainly, Your Honor." He didn't object, request a continuance, or ask for the hearing to continue to a second day.

¶ 26 Later, mother's counsel said, "I have a couple other witnesses I was hoping to get in. Is that not going to happen?" After the court said that it wouldn't, mother's counsel replied, "Thanks. I just don't want them sitting around for no reason."

¶ 27 Finally, at the very end of the hearing, mother's counsel informed the court that

> [t]here's a material witness that this court has
> not heard from that . . . would dispute a lot of
> what [father] said and would support what
> [mother] has testified. I don't know if the
> Court needs that information in order to

9

> render a decision. . . . [B]ut it is . . . information that would describe what was witnessed in terms of [father's] behavior toward [mother] in public.

¶ 28 The court replied that it wasn't inclined to increase mother's time when presentation of witnesses was "within [mother's] planning" and time had run out. Mother's counsel did not further attempt to identify the "material witness" or explain the witness's testimony or its importance.

## B. Standard of Review and Legal Principles

¶ 29 A meaningful opportunity to be heard is an inherent element of due process. *In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007). Parties are entitled to sufficient time in which to orderly present their cases. *Salby*, 126 P.3d at 302.

¶ 30 The trial court's interest in administrative efficiency may not take precedence over a party's right to due process. *Hatton*, 160 P.3d at 329. But the court may set a time limit on a hearing from the outset and monitor the parties' use of their time during the hearing. *See Maloney v. Brassfield*, 251 P.3d 1097, 1102-05 (Colo. App. 2010); CRE 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and

10

presenting evidence so as to . . . avoid needless consumption of time . . . .").

¶ 31    Because due process is implicated, we apply a heightened level of scrutiny to determine whether the trial court's time limits constituted an abuse of discretion at two levels: whether the limits were inadequate for the nature of the proceeding at the outset, and if not, whether they became inadequate because of developments during the proceeding. *See Maloney*, 251 P.3d at 1102. A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misconstrues or misapplies the law. *See In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

## C.    Analysis

¶ 32    The trial court did not abuse its discretion in setting the time limits or by denying mother's counsel's request for additional time. The parties had a little over three and a half hours each to present evidence about a single issue: the best interests of the child

pertaining to parenting time.[2]  *Cf. In re Marriage of Yates*, 148 P.3d 304, 309-10 (Colo. App. 2006) (determining that a three-day hearing was sufficient to present all issues — property division, maintenance, parenting time, decision-making, and child support — because both parties agreed to the time limits, husband's attorney did not object or suggest more time was needed until the end of the hearing, and the parties were reminded of the time limits throughout the hearing).  Here, mother's counsel was permitted to make his own strategic decisions concerning witness presentation, and he opted to present mother's testimony, grandmother's testimony, and lengthy testimony from a domestic violence expert.  He also extensively cross-examined father's witnesses.  *See Maloney*, 251 P.3d at 1104 (noting, in the division's consideration of whether the allocated length of time was adequate, that parties are permitted to make strategic decisions).  For this reason, we reject mother's comparison to *In re Marriage of Goellner*,

---

[2] The parties originally disputed the allocation of decision-making responsibility along with parenting time.  As best we can discern, the parties agreed to joint decision-making at the hearing, and the court ordered joint decision-making based on their agreement.  Mother doesn't appeal the allocation of decision-making authority.

770 P.2d 1387 (Colo. App. 1989). In that case, a division of this court concluded that the trial court abused its discretion by not granting wife additional time where husband presented his case first, and, after cross-examination, wife had only thirty minutes to present her case-in-chief. *Id.* at 1388-89. This case was markedly different.

¶ 33    Moreover, as the trial court pointed out, the parties were well aware of the time constraints before the hearing, and it was mother and her counsel's responsibility "to make sure [she] got the most important evidence before the Court during [her] allotted time frame." *See Maloney*, 251 P.3d at 1103 (considering whether time constraints result in unfair surprise). The trial court also demonstrated flexibility, permitting mother's witnesses to go "a little over" in the morning and finishing the hearing after six in the evening. *See id.* at 1104-05 (considering trial court's flexibility).

¶ 34    Finally, mother failed to adequately identify the evidence that was in danger of being excluded if the trial court didn't grant her more time. *See id.* at 1105 (rejecting party's claim that he was prejudiced by inability to present additional evidence in part because the party didn't make an adequate and timely offer of

13

proof); *see also* CRE 103(a)(2). The first two times the court mentioned time constraints during the hearing, mother's counsel said that he had other witnesses to present but didn't detail their prospective testimony. The third time — at the end of the hearing — mother's counsel said only that he wanted to present information from a single witness who would "dispute" father's testimony, "corroborat[e]" mother's testimony, and "describe what was witnessed in terms of [father's] behavior toward [mother] in public." Mother's counsel didn't explain what parts of the parties' testimony would be "disputed" or "corroborated" or describe in any detail the behavior about which the witness would testify.

¶ 35 This isn't sufficient to "aid [the] trial court in addressing [mother's] request[] to depart from [the] previously set time limit[]." *Maloney*, 251 P.3d at 1105. And mother's counsel's request for more time to present specific witnesses in the motion for reconsideration was both insufficiently detailed and untimely. *See id.* (holding that submission of pretrial disclosures as an exhibit to a motion for a new trial was an untimely and overly general proffer).

¶ 36 We aren't persuaded otherwise by mother's arguments to the contrary. She contends that the time for the hearing was

14

inadequate from the outset and that the court should have known of the inadequacy before trial because (1) the parties mediated for four days and participated in a full day of arbitration; (2) mother didn't have any input into the length of the hearing; and (3) the parties estimated they would each need around half a day for their direct examinations. We disagree. The time it took to mediate isn't relevant to whether mother had a reasonable opportunity to present her case at trial. And while mother wasn't represented at the case management conference where the court set the one-day hearing, mother's counsel entered his appearance just nine days later and didn't request additional time. Mother's counsel also didn't ask for more time after submitting mother's witness list or his estimate that he would need most of mother's three and a half hours for direct examination.

¶ 37 We also reject mother's contention that she was prejudiced by the hearing's length because she was unable to present evidence concerning her interaction and relationship with S.P. and her attention to S.P.'s mental, emotional, and physical needs — evidence that the trial court remarked was missing. Mother didn't timely raise her inability to present this evidence. At the end of the

hearing, when mother's counsel asked to present one more "material witness," he said that the witness would testify about father's behavior toward mother, not mother's relationship with S.P. Moreover, mother herself could have testified about these topics but didn't do so. *See id.* at 1104 ("[T]rial courts should allow the parties maximum latitude in presenting their cases within the allotted time.").

¶ 38    Finally, we reject as unpreserved mother's argument, to the extent she makes it, that she should have had more time to present her case because maternal grandmother testified through an interpreter. *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) (holding that to preserve an issue for appeal, the issue must be brought to the trial court's attention so that the court has an opportunity to rule on it).

¶ 39    For these reasons, we perceive no error in the length of the hearing set by the court or the court's denial of mother's request for additional time.

## IV.    Parenting Time

¶ 40    Mother contends that the trial court erred by (1) not considering whether the harm S.P. would suffer from moving to

North Carolina with father was outweighed by the advantage of the move; and (2) not finding that father committed domestic violence, and, therefore, not addressing other required domestic violence considerations.

¶ 41    Initially, we note that only the oral parenting time order contains the trial court's findings of fact and conclusions of law. The written parenting time order provides for joint decision-making and contains a parenting time schedule that parallels the schedule in the oral order.  We therefore consider the orders together.  *See Friends of Denver Parks, Inc. v. City & Cnty. of Denver*, 2013 COA 177, ¶ 35 ("Oral findings and conclusions that are contained in a transcript are adequate if they are 'sufficiently comprehensive to provide a basis for review.'" (quoting *Hipps v. Hennig*, 447 P.2d 700, 703 (Colo. 1968))).  However, in the event of a conflict, the written

order prevails over the oral order. *See Reed v. Indus. Claim Appeals Off.*, 13 P.3d 810, 813 (Colo. App. 2000).[3]

### A.   Best Interests of the Child

¶ 42    Mother argues that the trial court erred by not considering whether the harm S.P. would suffer from moving to North Carolina with father was outweighed by the advantage of the move. We discern no basis for reversal.

### 1.   Legal Principles and Standard of Review

¶ 43    When allocating parenting time, the court must focus on the child's best interests, giving paramount consideration to the child's safety and physical, mental, and emotional conditions and needs. *See* § 14-10-123.4(1)(a), C.R.S. 2024; § 14-10-124(1.5), (1.7), C.R.S. 2024; *see also In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 16. In making this determination, the court must consider all relevant factors, including, as pertinent here, (1) the

---

[3] In her reply brief in the second appeal, mother argues for the first time that father did not properly serve her with the proposed written parenting time order, implying that she wants to object to it. We don't consider this contention because it was raised for the first time on reply. *See Jenkins v. Haymore*, 208 P.3d 265, 269 (Colo. App. 2007). And in any event, as best we can discern, mother doesn't argue that any specific provision in the written parenting time order is inconsistent with the oral parenting time order.

wishes of the child's parents as to parenting time; (2) the interaction and interrelationship of the child with his or her parents and any other person who may significantly affect the child's best interests; (3) any report of domestic violence; (4) the child's adjustment to his or her home, school, and community; (5) the ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party; (6) whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support; (7) the physical proximity of the parties to each other as it relates to the practical considerations of parenting time; and (8) the ability of each party to place the needs of the child ahead of his or her own needs. § 14-10-124(1.5)(a).

¶ 44     The court is not required to make findings on all statutory factors. *In re Custody of C.J.S.*, 37 P.3d 479, 482 (Colo. App. 2001). Findings must be sufficiently explicit, however, to give the reviewing court a clear understanding of the basis of the order. *In re Marriage of Lester*, 791 P.2d 1244, 1246 (Colo. App. 1990).

¶ 45     We review a court's parenting time determination for an abuse of discretion. *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 9. A

court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplied the law. *Id.*

### 2. The Trial Court's Best Interests Findings

¶ 46 In its oral parenting time order, the trial court made the following findings:

- Each parent believed he or she was better equipped to meet S.P.'s best interests.

- Each parent would continue to allow and foster the relationship between S.P. and the other parent.

- There were no credible reports of domestic violence.

- S.P. appeared to be well cared for and comfortable in both parents' homes.

- Mother had criticized or made disparaging remarks about father to S.P. and had not acknowledged, apologized for, or changed her behavior.

- Father had "minimiz[ed]" mother's home, disparaged mother's current partner, and criticized mother to S.P.; however, father had apologized for his comments and recognized that they were unhelpful and unfair.

20

- Since the separation, both parents had been "sharing 50/50 responsibility" for S.P. and allowed her to communicate via video call with the other parent and family members.

- Both parents had been "involved with [S.P.'s] schooling [and] the establishment of her values." They both "appear[ed] to be conscientious to her needs and the ability to . . . encourage mutual support."

- Father had been responsible for taking S.P. to the doctor and dentist and paying for and enrolling S.P. in preschool.

- Father volunteered at S.P.'s school.

- Mother did not testify or offer other evidence regarding her current involvement in S.P.'s health or schooling.

- Most of the "real decision making and caretaking" was father's responsibility.

¶ 47     Based on these findings, the trial court determined that it was in S.P.'s best interests to live primarily with father in North Carolina.

### 3.     Analysis

¶ 48     We disagree with mother's premise that the trial court was required to explicitly consider whether the harm likely to be caused

to S.P. by moving to North Carolina was outweighed by the advantage of the move. While a court is required to make that consideration in determining *whether to modify* a "custody decree or a decree allocating decision-making responsibility," it isn't required to do so in an initial allocation of parental responsibilities (APR). § 14-10-131(2), C.R.S. 2024. *Compare* § 14-10-131(2)(c) ("The court shall not modify a custody decree . . . unless . . . the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."), *with* § 14-10-124(1.5)(a) (requiring only consideration of factors such as the child's "adjustment to [the] home, school, and community" and "[t]he physical proximity of the parties to each other" in initial APR).

¶ 49   We aren't persuaded otherwise by *In re Marriage of Garst*, on which mother relies, because that case concerned a modification of an existing APR order as a result of one parent's relocation. 955 P.2d 1056, 1059 (Colo. App. 1998). At most, *Garst* stands for the proposition that the best interests standard that applies in initial APR determinations also applies to modifications. It doesn't stand for the principle that a factor specific to modifications must be considered in an initial APR.

¶ 50    Moreover, the record reflects that the court considered evidence of the best interests factors pertaining to father's planned move: the physical proximity of the parents to one another; S.P.'s attachment to her home, school, and community; and the presence or absence of a community (extended family and friends) for S.P. in each location.  *See* § 14-10-124(1.5)(a)(IV), (VIII).  The trial court explicitly referenced testimony from each of the parties and their family members about (1) S.P.'s community and family members in Colorado versus North Carolina; (2) S.P.'s adjustment to changing preschools in Colorado; and (3) S.P.'s educational options in North Carolina.

¶ 51    We acknowledge that the court's findings on these factors were thin: it noted only that, because of S.P.'s age, she would be transitioning from preschool to kindergarten no matter where she lived.  However, the court did not need to make findings on every statutorily enumerated factor so long as (1) there is "some indication in the record that the trial court considered" the pertinent factors, *Garst*, 955 P.2d at 1058; and (2) the court made sufficient findings to explain its parenting time allocation and its determination that allowing father to be the primary parent was in

23

S.P.'s best interests, *see In re Marriage of Collins*, 2023 COA 116M, ¶ 12.

¶ 52    Ultimately, while the court considered the evidence relevant to the move, it concluded that S.P.'s best interests were served by moving with father to North Carolina because father was "in a position of primary caregiver/caretaker," and "while [m]other has engaged well and also co-parented, much of the real decision-making and caretaking has fallen on [father]." These findings are supported by the record, and we may not reweigh the court's resolution of conflicting evidence. *See id.* Accordingly, we perceive no abuse of discretion in the court's consideration and resolution of the best interests factors.

### B.    Domestic Violence Allegations

¶ 53    Mother also contends that the trial court erred by not finding that father committed an act of domestic violence. And she argues that, because domestic violence occurred, the trial court erred by not considering additional best interests factors under section 14-10-124(4). We again discern no reversible error.

### 1. Legal Principles and Standard of Review

¶ 54    Domestic violence "means an act of violence or a threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship." § 14-10-124(1.3)(b).

¶ 55    We review a trial court's factual findings for clear error. *Gagne v. Gagne*, 2019 COA 42, ¶ 17. "A court's finding of fact is clearly erroneous if there is no support for it in the record." *Id.* We review the trial court's application of the law de novo. *Id.*

¶ 56    An error is only reversible if it affects the substantial rights of the parties. C.R.C.P. 61. An error affects a party's substantial rights if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (quoting *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986)).

### 2. Physical Domestic Violence Incident

¶ 57    At the hearing, mother testified that, in September 2022, she and father agreed that she could retrieve her property from father's home while he was away with S.P. However, father returned home with S.P. while mother was still packing. Father took S.P., who was

25

upset that she couldn't go outside, to an upstairs bedroom.  When mother went upstairs, father "went crazy on [mother]" and told her to leave.  Instead, mother, who said she could hear S.P. screaming, tried to enter the bedroom while father blocked the door.  Mother opened the door, causing father to trip, and he became "really upset."  Father then grabbed mother's arms, "move[d]" her next to the stairs, and yelled and swore at her, causing her to lose her balance and fall down the stairs.  Mother testified that father bruised her when he moved her to the stairs, and she introduced an exhibit showing the bruises.  Father was not examined about the incident.

¶ 58    In its oral order, the trial court found that, while it was concerned about the incident and did not condone father's behavior, mother was "trying to gain entrance" into a part of the home in which she was no longer living, and father's actions "[were] simply to move her from the [bedroom] door."  The court also noted that mother herself described the fall as losing her balance.  Finally, the court observed that the police were not called and that no charges were filed related to the incident.  It concluded that there was no "substantial evidence" of domestic violence.

¶ 59    Even assuming that the court erred by not characterizing the incident as domestic violence, we aren't persuaded that the error affected mother's substantial rights.

¶ 60    If the court had found domestic violence, it would have been required to (1) consider the statutory "best interests" factors in light of that finding; (2) consider, "as the primary concern, the safety and well-being of the child and the abused party"; and (3) "consider conditions on parenting time that ensure the safety of the child and abused party." § 14-10-124(4)(b), (d), (e). Such conditions may include, but are not limited to

> (I) [a]n order limiting contact between the parties . . . ;
>
> (II) [a]n order that requires the exchange of the child for parenting time to occur in a protected setting determined by the court;
>
> (III) [a]n order for supervised parenting time;
>
> (IV) [a]n order restricting overnight parenting time;
>
> (V) [a]n order that restricts the party who has committed domestic violence . . . from possessing or consuming alcohol or controlled substances during parenting time . . . ;
>
> (VI) [a]n order directing that the address of the child or of any party remain confidential; [and]

(VII) [a]n order that imposes any other condition on one or more parties that the court determines is necessary to protect the child, another party, or any other family or household member of a party.

§ 14-10-124(4)(e).

¶ 61    Mother doesn't explain, and we can't discern, how a finding characterizing the incident as domestic violence would have substantially influenced the outcome of the parenting time order. While we, like the trial court, recognize the seriousness of domestic violence, the legislature has deemed it a relevant, but not necessarily dispositive factor in determining parenting time. Rather, a court must consider any finding of domestic violence alongside the myriad other statutory factors when determining the allocation of parenting time in the child's best interests. *See Yates*, 148 P.3d at 308 (noting that "child abuse or spousal abuse" are "but two, albeit important, factors in assessing the best interests of the child"). Here, the trial court awarded primary parenting time to father despite its findings and concerns about the physical incident by the stairs. Mother doesn't explain how a finding that this incident constituted domestic violence would have overcome the trial court's other findings that it was in S.P.'s best interests to live

28

primarily with father because father had been S.P.'s "primary caregiver [and] caretaker."

¶ 62    Moreover, mother doesn't identify any statutorily enumerated condition that she requested but the court declined to impose because it didn't find domestic violence. *See* § 14-10-124(4)(e) (listing potential parenting plan provisions if the court finds domestic violence).  For example, mother didn't request at trial that father's parenting time be supervised or that he not receive overnight time, indicating that mother didn't think such measures were necessary for S.P.'s safety.  Additionally, mother's proposed parenting plan — that she be the primary parent with extended parenting time permitted for father during the summers, along with some school year time — would have generated roughly the same amount of contact between father and mother as the parenting plan entered by the court.

¶ 63    On this record, any error by the trial court in failing to make a finding of domestic violence isn't reversible.

### 3.    Nonphysical Domestic Abuse

¶ 64    Mother also argues that the trial court erred by "ignoring" the evidence she presented, including expert testimony, of incidents of

nonphysical domestic abuse. But the record reflects that the trial court considered this evidence and found that mother's claims that (1) father controlled her financially; (2) father controlled her physical movements; and (3) father attempted to isolate himself, mother, and S.P. from friends and family weren't credible and were contradicted by other evidence.

¶ 65 As for mother's expert, the court observed that "errors" in the expert's report emerged on cross-examination and that the report had limited persuasive value because the expert didn't observe any of the parties and spoke only with mother and heard "her side"; the expert didn't speak with father or S.P. It is the trial court's responsibility to judge witness credibility, determine the weight and probative value of the evidence, and resolve evidentiary conflicts, and we may not disturb its findings in this regard. *Hatton*, 160 P.3d at 330; *Yates*, 148 P.3d at 318.[4]

---

[4] Because of our conclusion, we need not address whether the nonphysical incidents described by mother can be classified as "domestic violence" under section 14-10-124(1.3)(b), C.R.S. 2024.

## V. Attorney Fees Under Section 14-10-128.5

¶ 66    Mother argues that the trial court erred by granting father attorney fees under section 14-10-128.5.  We agree in part.

### A. Legal Principles and Standard of Review

¶ 67    Section 14-10-128.5(2) provides, in relevant part, as follows:

> In circumstances in which a party moves for a de novo hearing by the court, if the court, in its discretion based on the pleadings filed, grants the motion and the court substantially upholds the decision of the arbitrator, the party that requested the de novo hearing shall be ordered to pay the fees and costs of the other party and the fees of the arbitrator incurred in responding to the application or motion unless the court finds that it would be manifestly unjust.

¶ 68    "Interpretation of a statute is a question of law that we review de novo." *In re Marriage of DeZalia*, 151 P.3d 647, 648 (Colo. App. 2006).  "In construing a statute, we strive to give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute." *In re Marriage of Ciesluk*, 113 P.3d 135, 141 (Colo. 2005).  If the meaning of a statute is clear and unambiguous, courts need not resort to interpretive rules to divine

the General Assembly's intent.  *In re Marriage of Schmitt*, 89 P.3d 510, 511 (Colo. App. 2004).

### B.    Meaning of "Substantially Uphold"

¶ 69    Mother first argues that the trial court did not substantially uphold the arbitrator's award because, even though the result was similar, "the reasoning behind the result was substantially different."  We disagree.

¶ 70    The arbitrator ordered that S.P. would primarily reside with father in North Carolina and mother would have parenting time during the majority of school vacations, along with certain alternating holidays during the school year.  The trial court substantially upheld that order because it also named father the primary residential parent, giving mother parenting time during the majority of school vacations along with some weekend parenting time during the school year.  *See* Black's Law Dictionary 1734-35 (12th ed. 2024) (defining "substantial" as "[c]ontaining the essence of a thing; conveying the right idea even if not the exact details").

¶ 71    We acknowledge that the trial court's reasoning for allocating parenting time primarily to father differed from the arbitrator's reasoning.  But nothing in the statute distinguishes the result from

the reasoning or suggests that both must be the same to trigger a fee award.

¶ 72 In a similar vein, mother argues that, because her reasons for requesting a de novo hearing were not frivolous, the statute punishes her for raising a legitimate concern with the arbitrator's decision. However, the language of the statute doesn't provide any exception to the mandatory fee award simply because the challenging party raises valid concerns with the arbitrator's decision or reasoning. We can't read requirements into the statute that don't exist. *See Hobbs v. City of Salida*, 2024 COA 25, ¶ 20 (We can't "rewrite a statute to achieve a different result than that dictated by the legislature's selected language.").

### C. Scope of Attorney Fees Awarded

¶ 73 Mother next contends that the trial court erred by (1) awarding father fees and costs incurred before mother filed her motion for a de novo hearing and (2) awarding father fees and costs incurred in preparing for and attending the hearing. We agree with the first contention but reject the second.

### 1. Fees Incurred Before the Motion

¶ 74    The plain language of section 14-10-128.5(2) requires mother to pay father's fees incurred in "responding to the application or motion" for a de novo hearing.  Mother filed her motion for a de novo hearing on October 31, 2022.  Father's request for attorney fees contained billing entries for fees incurred from September 26, 2022, through February 9, 2023.  The court awarded father all of his requested fees.  But any fees or costs incurred before mother filed the motion for a de novo hearing cannot logically be incurred in *responding* to that motion.  Accordingly, father is not entitled to recover those fees and costs.  *See* § 14-10-128.5.  The court therefore erred to the extent it awarded father any fees incurred before mother filed the motion for a de novo hearing.

### 2. Fees Incurred in Preparing for and Attending the De Novo Hearing

¶ 75    We reject mother's argument that the statute's plain language limits the recoverable fees to those incurred in filing the objection to the motion for the de novo hearing and attending the case management conference where the trial court determined whether to grant it.  Rather, fees incurred in "responding" to a motion for a

34

de novo hearing necessarily include fees incurred in preparing for and attending the hearing once the motion is granted.

¶ 76    The surrounding statutory language supports this interpretation.  If the legislature were concerned only about the fees incurred in objecting to a motion for a de novo hearing (and not the fees incurred after the hearing was granted), it would have made such fees recoverable even if the court simply denied the motion and declined to hold a hearing, thereby leaving the arbitrator's award in place.  By making the fees recoverable only if the court *holds a hearing* and substantially upholds the arbitration award, the legislature signaled its intent to award not only the fees incurred in objecting to the motion but also the fees incurred in connection with the hearing itself.

## D.    "Manifestly Unjust"

¶ 77    Mother also argues that, given the disparity between her income and father's income, the trial court should have denied the otherwise-mandatory fee award as manifestly unjust.  *See* § 14-10-128.5(2).

¶ 78    A determination that awarding fees under the statute would be "manifestly unjust" is an equitable decision that we review for an

abuse of discretion. *Cf. In re Marriage of Rodrick*, 176 P.3d 806, 815-16 (Colo. App. 2007) (noting that a trial court has broad discretion to award attorney fees under section 14-10-119, C.R.S. 2024); *In re Marriage of Hein*, 253 P.3d 636, 637 (Colo. App. 2010) (noting that the trial court has discretion to determine whether the presumptive amount of child support is "inequitable, unjust, or inappropriate," thereby justifying a deviation from the child support guidelines).

¶ 79    The trial court's attorney fees order granted father all his requested fees without addressing mother's contention that awarding fees would be manifestly unjust. Thus, we are unable to determine the basis of its decision. *See In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008) (A trial court order must contain sufficient findings of fact and conclusions of law to enable an appellate court to "determine the grounds upon which it rendered its decision."). On remand, the court should consider whether the award of fees for the proceedings below is manifestly unjust in light of the parties' economic circumstances at the time of remand, *cf. In re Marriage of Wells*, 850 P.2d 694, 696 (Colo. 1993) (concluding that a court must consider the parties' economic circumstances at

the time of remand when dividing property); *In re Marriage of Martin*, 2021 COA 101, ¶ 42 (directing trial court to consider economic circumstances at the time of remand when determining appellate attorney fees under section 14-10-119), and make sufficient findings to enable a reviewing court to determine the basis of its order, *see Rozzi*, 190 P.3d at 822.[5]  While a trial court may conclude that an attorney fee award under section 14-10-128.5 is manifestly unjust based on the parties' economic circumstances, that determination is not the same as the determination about whether to award attorney fees under section 14-10-119.

## VI.   Child Support

¶ 80     Mother contends that the court erred by entering father's proposed child support order without evidence as to (1) the number

---

[5] To the extent mother argues that the fee award was also unjust because she had a legitimate complaint regarding the arbitrator's reasoning, we decline to address this argument because it isn't preserved.  *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010).  While we direct the trial court to consider the parties' economic circumstances on remand, we express no opinion about what other factors a court may consider when determining whether a fee award under section 14-10-128.5, C.R.S. 2024, is "manifestly unjust."

of overnights S.P. would have with each parent and (2) father's expenses for work-related child care and health insurance. We agree.

¶ 81 Initially, we disagree with father that mother failed to preserve this contention for review. Mother's claim didn't arise until the court entered father's proposed child support order, and a party isn't required to file a post-trial motion in order to appeal. *See* C.R.C.P. 59(b). We also reject father's suggestion, to the extent he makes it, that mother waived this contention by failing to present evidence on this issue during the de novo hearing. Although the parties apparently agreed in advance to leave the issue of child support open pending the result of the de novo hearing, the subject of the hearing was strictly limited to parenting time and decision-making.

¶ 82 The amount of child support due from one parent to the other is calculated based on the incomes of the parents and, as relevant here, the number of overnights with each parent and expenditures paid directly by each parent for work-related child care costs and the child's portion of health insurance premiums. § 14-10-115(8)-(10), C.R.S. 2024.

¶ 83     Father submitted a proposed, unsworn child support worksheet indicating that he had 273 overnights or more with S.P. per year; he paid $1,004 per month in work-related child care; and S.P.'s portion of the health insurance premium was $215 per month. This resulted in a child support payment of $1,043.53 per month from mother to father in "current" child support and a total of $8,348.24 in child support arrears. Father used these amounts in his proposed support order.

¶ 84     When the court adopted father's proposed order, it implicitly adopted his overnight and expense figures as its factual findings. Though we defer to a trial court's factual findings if they are supported by any evidence in the record, *In re Marriage of Young*, 2021 COA 96, ¶ 8, we see no such evidence here. While overnights are sometimes calculable from the face of a parenting plan, the court's parenting plan in this case was based on S.P.'s school calendar. Without that calendar, we can't discern whether the number of overnights was correct. And as far as we can tell, there isn't any evidence supporting father's expenses.

¶ 85     Accordingly, we reverse the trial court's support order and remand the case to the trial court to recalculate child support. On

remand, the trial court may take additional evidence as necessary to support its calculation. *See In re Marriage of Corak*, 2014 COA 147, ¶ 21 (noting that the trial court has discretion to receive additional evidence on remand).

## VII. Miscellaneous Contentions

¶ 86 Finally, mother contends that the trial court erred by (1) checking a box on the decree of dissolution of marriage indicating that mother was represented by counsel even though her counsel withdrew shortly after the de novo hearing and (2) failing to notify mother of the October 2023 orders. We can't discern how the "check box" error would result in prejudice to mother. While failure to receive notice of a court's orders could certainly prejudice a party's appellate rights, mother timely appealed the orders. And mother doesn't otherwise explain how either of these purported errors prejudiced her. Accordingly, we conclude that the errors, if any, aren't reversible because they didn't affect mother's substantial rights. *See* C.R.C.P. 61.

## VIII. Appellate Attorney Fees

¶ 87 Mother requests her appellate attorney fees under section 14-10-119 because of the disparity in the parties' incomes. Father

opposes her request, arguing that mother "should be financially secure" with her income, spousal maintenance payments, and money she received from the property division.

¶ 88    Father requests his appellate attorney fees under both section 14-10-128.5 and section 14-10-119. Regarding section 14-10-128.5, unless such an award of fees would be manifestly unjust, we agree that father is entitled to the fees incurred in successfully defending the trial court's parenting time orders on appeal. *See Levy-Wegrzyn v. Ediger*, 899 P.2d 230, 233 (Colo. App. 1994) (When "a party, pursuant to a statute, has been appropriately awarded attorney fees for a stage of the proceeding prior to the appeal, that party will be entitled to reasonable attorney fees for defending the appeal."). Mother opposes father's request, arguing that an award of appellate fees to father would be manifestly unjust due to the parties' disparate financial circumstances.

¶ 89    Because the district court is in a better position than we are to make findings about the parties' financial circumstances, we direct the court to consider both parties' appellate fee requests on remand

based on the parties' relative financial circumstances at that time.[6]
*See* C.A.R. 39.1; *Martin*, ¶ 42.

¶ 90    We deny father's request for appellate attorney fees under section 14-10-119 because father provides no argument about the relative financial resources of both parties to support his request. *See* § 14-10-119 (providing that "[t]he court from time to time, *after considering the financial resources of both parties*" may order one party to pay the attorney fees of the other) (emphasis added). Instead, father asserts that mother's "continued pursuant [sic] of litigation and her refusals to accept the carefully considered and reasoned judgments" of the arbitrator and trial court have imposed "burdens and expenses" on him. Essentially, father requests that he be awarded his fees as a punishment for mother's pursuit of these appeals. Although mother's conduct may be considered to the extent that "it might affect the reasonableness and necessity of attorney fees" *she* incurred, an award of fees under section 14-10-

---

[6] Because neither party raises this issue, we express no opinion about the interaction of competing attorney fee requests under section 14-10-128.5 and section 14-10-119, C.R.S. 2024.

119 "should not be used as punishment against a party."  *C.J.S.*, 37 P.3d at 481.

## IX.   Disposition

¶ 91     The judgment is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.

JUDGE HARRIS and JUDGE TAUBMAN concur.