25CA0348 Marriage of Farrell 01-29-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0348
Douglas County District Court No. 22DR676
Honorable Daniel Warhola, Judge

In re the Marriage of

Brian Thomas Farrell,

Appellant,

and

Candace Rae Farrell,

Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

Márquez Law, Jason A. Márquez, Denver, Colorado, for Appellant

Epstein Patierno, LLP, John C. Haas, Denver, Colorado, for Appellee

¶ 1     In this dissolution of marriage case involving Brian Thomas Farrell (father) and Candace Rae Farrell (mother), father appeals the allocation of sole decision-making responsibility to mother, the property division, and the award of spousal maintenance to mother. We affirm in part, reverse in part, and remand for additional proceedings.

## I.     Relevant Facts

¶ 2     The parties married in 2013 and share a daughter. They separated in June 2022 after father was arrested and charged with domestic violence based on his alleged assault of mother in the child's presence. A few months later, a jury acquitted him on the criminal charges.

¶ 3     In November, father petitioned to dissolve the marriage. The district court appointed a parental responsibilities evaluator (PRE) to make recommendations regarding an allocation of decision-making responsibility and parenting time.

¶ 4     In late 2024, the district court held an evidentiary hearing, after which it dissolved the marriage and entered permanent orders.

The court

- granted mother sole decision-making responsibility for the then-ten-year-old child based on findings that father had committed domestic violence and that the parties could not make decisions together;

- named mother the child's primary residential parent;

- allocated the marital residence to mother because the child was living primarily with her and it was the only home the child had ever known;

- awarded most of the retirement accounts to father; and

- directed father to pay mother spousal maintenance of $3,257 per month for sixty-seven months.

The following table summarizes the district court's overall property division:

| Marital Asset/Debt | Marital Value | Mother's Portion | Father's Portion |
|---|---|---|---|
| Marital Residence | $825,000 | $825,000 | |
| Mortgage | ($270,734) | ($270,734) | |
| Vehicles | $12,305 | $10,000 | $2,305 |
| Bank Accounts | $7,150 | $3,662 | $3,488 |
| Investment Accounts | $147,455 | $52,103 | $95,352 |
| Retirement Accounts | $945,697 | $175,106 | $770,591 |
| Personal Property | $50,000 | $25,000 | $25,000 |
| Other Debts | ($53,944) | | ($53,944) |
| Total | $1,662,929 | $820,137 | $842,792 |

## II.    Decision-Making Responsibility

¶ 5     Father contends that the district court erred by allocating sole decision-making responsibility to mother.  We disagree.

¶ 6     A district court has broad discretion over the allocation of decision-making responsibility.  *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26.  We will not disturb the court's decision absent a showing that the court misapplied the law or acted in a manifestly arbitrary, unreasonable, or unfair manner.  *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45.  We must defer to the district court's

3

factual findings if they are supported by the record. *In re Marriage of Garrett*, 2018 COA 154, ¶ 9.

¶ 7     The district court must allocate decision-making responsibility in accordance with the child's best interests and consider all relevant factors. *See* § 14-10-124(1.5)(a), (b), C.R.S. 2025; *In re Marriage of Morgan*, 2018 COA 116M, ¶ 21.

¶ 8     When the district court finds by a preponderance of the evidence that a party has committed domestic violence, it shall not be in the child's best interests to allocate joint decision-making responsibility over a party's objection, "unless the court finds that there is credible evidence of the ability of the parties to make decisions cooperatively in the best interest of the child in a manner that is safe for the abused party and the child." § 14-10-124(4)(a)(II)(A); *see also* § 14-10-124(4)(d) ("[T]he court shall consider, as the primary concern, the safety and well-being of the child[ren] and the abused party.").

¶ 9     For purposes of the domestic code, domestic violence "means an act of violence or a threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship . . . and may include any act or threatened act against a person . . .

when used as a method of coercion, control, punishment, intimidation, or revenge." § 14-10-124(1.3)(b); *see Pawelec*, ¶ 54. Coercive control is defined as "a pattern of threatening, humiliating, or intimidating actions," including "[n]ame-calling, degrading, or demeaning the individual . . . on a frequent basis." § 14-10-124(1.3)(a)(IV).

¶ 10     The district court made the following findings in support of its order regarding decision making:

- Father was arrested and charged with misdemeanor "physical assault" as an act of domestic violence against mother. The criminal case indicated that the child was present during the incident. A jury later acquitted him.

- While the court's finding that father committed domestic violence could have been made more expressly, read in context the court's findings clearly indicate that it concluded the domestic violence incident with which father was criminally charged was established by a preponderance of the evidence, despite the criminal jury's finding that it was not established beyond a reasonable doubt.

5

- There was a history of domestic violence in the child's presence.

- The child manifested significant trauma from domestic violence she had witnessed "at the hands of [father] against [mother]," was scared that father would hurt mother, and believed that father might take the child and not return. The child's fears were based in reality, and she was currently "struggling" with father. In fact, she recently became physically aggressive toward him due to her trauma.

- The child frequently resisted spending time with father. There had been no overnight visits for a long time, and their relationship was "strained."

- It was important for father to have a healthy role in the child's life.

- There was ongoing frustration between the parties, along with anger and possible bitterness.

- The family therapist credibly testified that those feelings were difficult for the parties to hide from the child.

6

¶ 11    From those findings, the court determined that allocating mother sole decision-making responsibility served the child's best interests.  However, the court also ordered mother to consult with father before exercising her decision-making with respect to the child.

¶ 12    Father maintains that there was no evidence to support the district court's findings of domestic violence and the parties' inability to make joint decisions.  He is mistaken.

¶ 13    Mother testified that she experienced emotional and verbal abuse by father during the marriage.  She added that there were multiple times when he had threatened to kill her or "put [her] head through glass."  She recalled that when he was unhappy about something she had done or said, he would sometimes back her into a closet, leaving "fingerprint bruises."  She said that the child was exposed to the "domestic abuse."  Moreover, while father denied causing physical harm to mother, he admitted to saying things that he should not have said.

¶ 14    As for the parties' difficulty making decisions together, the family therapist testified that the child did not consistently receive much-needed individual therapy, a problem the therapist attributed

to both parties. The therapist explained that there had been tension in the home for years, that it impacted the child, and that the parties were unable to keep their feelings about each other and the dissolution from the child. Moreover, in closing argument, mother asked for sole decision-making responsibility to avoid further abuse.

¶ 15    Because the district court made the findings required by section 14-10-124(4)(a)(II)(A), and those findings have record support, we will not disturb them. *See Garrett*, ¶ 9. And in view of those findings, we discern no error in the court's legal conclusion. *See* § 14-10-124(4)(a)(II).

¶ 16    To the extent that father argues that the district court erred by not following the PRE's recommendation that the parties share decision-making responsibility, the court was not required to do so; rather, it was free to reach its own conclusions. *See In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1133 (Colo. 2010); *In re Marriage of Chester*, 907 P.2d 726, 731 (Colo. App. 1995) ("[R]ecommendations made by evaluators appointed in custody matters are merely suggestions to the trial court.").

¶ 17    Father also argues that the district court could not find domestic violence without proof of bodily injury under the criminal third-degree assault statute, section 18-3-204(1)(a), C.R.S. 2025, which was the underlying basis for his arrest. We decline to address the issue because it was not preserved for our review. Father never made this argument in the district court, and the court did not rule on it. *See Pawelec*, ¶ 38 (stating that to preserve an issue for appeal, it must be presented in such a way that the district court has an opportunity to rule on it); *see also Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 26 (only specific arguments made to the district court are preserved for appeal); *In re Marriage of Fabos*, 2019 COA 80, ¶ 31 n.4 (appellate court will not address an argument raised for the first time on appeal).

¶ 18    Last, father suggests that the district court improperly relied on hearsay statements from the child when it found that domestic violence had occurred. We decline to address this undeveloped issue. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (appellate court will not consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also In re Marriage of Dean*, 2017 COA 51, ¶ 31 (appellate court will

not consider arguments in a reply brief that seek to expand on contentions raised in an opening brief).

### III. Property Division

### A. Tax Implications

¶ 19    Father contends that the property division was unfair because he received most of the retirement accounts and would have to pay taxes and penalties to use those funds.  He asserts that the court should have divided the retirement accounts evenly and ordered the marital residence sold, with the proceeds to be split evenly to avoid any concerns regarding the comparative liquidity of these assets.  Alternatively, he contends the court should have discounted the retirement accounts to account for tax consequences.  Had the court done so, he argues, it would have seen that the allocation was inequitable because mother received more assets than father.  We see no error.

¶ 20    A district court has great latitude to equitably divide the marital estate based on the facts and circumstances of each case, and we may not disturb its property division unless the court abused its discretion.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 19.

¶ 21    Father does not identify where in the record he presented specific evidence showing tax consequences or penalties he would incur if he had to liquidate some or all of the retirement accounts. *See* C.A.R. 28(a)(7)(B) (arguments must contain citations to parts of the record on which the appellant relies); *see also O'Quinn v. Baca,* 250 P.3d 629, 631-32 (Colo. App. 2010) (parties should not expect an appellate court to peruse the record without the help of appropriate citations).  We have nevertheless reviewed the record and conclude that neither party presented the court with specific evidence on the issue of tax consequences or penalties, and the district court did not have an opportunity to consider and rule on those issues.  *See In re Marriage of Krejci,* 2013 COA 6, ¶ 23 (parties' failure to present sufficient evidence to the district court does not provide grounds for reversal); *see also In re Marriage of Eisenhuth,* 976 P.2d 896, 901 (Colo. App. 1999) (the district court is required to consider the evidence presented to it; it does not act as a surrogate attorney).

¶ 22    Because the district court had no way to evaluate the potential tax consequences and penalties associated with any liquidation of the retirement accounts, we discern no error in this regard.  *See In*

*re Marriage of Dale*, 87 P.3d 219, 226 (Colo. App. 2003) (district court need not consider capital gains taxes that are hypothetical); *see also In re Marriage of Bayer*, 687 P.2d 537, 539 (Colo. App. 1984) (district court properly declined to account for capital gains tax implications when there was no evidence of a potential sale of the property).

¶ 23     We further note that the estate consisted of only two items of significant value: the marital residence and the retirement accounts.  Contrary to father's statements, both assets are illiquid and could trigger potential tax consequences if liquidated.  The court therefore had limited options for dividing the estate in a way that minimized those consequences.

¶ 24     Against that backdrop, the district court determined that awarding the residence to mother was necessary because it was the only home the child had ever known.  *See* § 14-10-113(1)(c), C.R.S. 2025 (the district court should consider the desirability of awarding the family residence to the spouse with whom any child resides most of the time).  So, father's assertion is little more than a disagreement with how the court exercised its broad discretion in dividing the marital estate, and that is not a basis for reversal.  *See*

12

*Collins*, ¶ 19; *see also In re Marriage of Payne*, 897 P.2d 888, 889 (Colo. App. 1995) ("The mechanism employed to effect an equitable division rests within the sound discretion of the [district] court, and the court may enter a variety of orders to implement its decision.").

## B.  Marital Debts

¶ 25    Father insists that the district court erred by assigning him all the marital debts despite the parties' stipulation to keep the debts in their names.  He points to $20,284 owed in mother's name that the court allocated to him.  We disagree.

¶ 26    In their joint trial management certificate, the parties agreed that each would retain the "debt accounts held, respectively, in his or her individual name although the monetary balances therein shall be allocated by the [c]ourt."  At the start of the hearing, mother's attorney reiterated that understanding, saying that each party would "keep[] what's in their names, keep[] that account," but that "money can move around accordingly."

¶ 27    The parties agreed that two credit card accounts were held in mother's name: a Costco Citi credit card with a balance of $9,316 plus a Chase credit card with a balance of $10,968.  In the permanent orders, after acknowledging both the stipulation and the

fact that those debt accounts were mother's, the district court directed father to pay off the balances.

¶ 28     We conclude that the district court honored the parties' stipulation. The stipulation addressed ownership of the debt accounts, not who would ultimately be responsible for the balances. Consistent with that, the court left the debt accounts in mother's name and exercised its discretion to allocate the outstanding balances to father. In other words, the court did not transfer ownership of the debt accounts; it simply required father to pay the balances. Thus, we discern no error in this regard.[1]

### IV.    Maintenance

### A.    Bonus Income

¶ 29     Father contends that the district court improperly included his bonuses when calculating his income. We are not persuaded.

¶ 30     In calculating maintenance, income means a party's actual gross income if the party is fully employed. § 14-10-114(8)(a)(II),

---

[1] We decline to address father's assertion, raised for the first time in his reply brief, that a court cannot assign marital liabilities disproportionately to one spouse. *See Pena v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 21, n.4 ("We do not . . . consider arguments raised for the first time in a reply brief.").

C.R.S. 2025. Generally, gross income means income from any source, including bonuses. § 14-10-114(8)(c)(I)(E). But, unless guaranteed, the receipt of a future bonus is always speculative to some degree and necessarily becomes a question of fact for the district court. *See In re Marriage of Finer*, 920 P.2d 325, 329 (Colo. App. 1996).

¶ 31    Father testified that he received annual bonuses of $14,847 in 2021, $23,735 in 2022, $17,796 in 2023, and $18,180 in 2024. He also testified that future bonuses were not guaranteed.

¶ 32    The district court determined that father's monthly income was $19,756, which included an average of his bonus income over the past four years. *See In re Marriage of Capparelli*, 2024 COA 103M, ¶ 32 ("In situations where a party's income fluctuates or there is conflicting evidence regarding the income amount, the district court may, in its discretion, consider and use an average of the party's past income.").

¶ 33    The court explained that given father's recent bonus history, it did not find credible father's assertion that he would suddenly receive no bonus at all. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (credibility determinations and the weight, probative force,

and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the district court's sole discretion); *see also In re Marriage of Wollert*, 2020 CO 47, ¶ 23 (The district court's ability to observe and evaluate the witnesses' credibility deserves deference because a "cold record is a poor substitute for live testimony." (quoting *People v. Scott*, 600 P.2d 68, 69 (Colo. 1979))); *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) (it is the district court's prerogative to believe all, part, or none of a witness's testimony, even if uncontroverted).

¶ 34 Because the district court's determination, including its credibility assessments, were supported by the record, we perceive no error. *See Garrett*, ¶ 9.

## B. Sufficiency of Findings

¶ 35 Father asserts that the district court abused its discretion by awarding maintenance to mother without making the necessary factual findings. We agree.

¶ 36 The district court has broad discretion in deciding the amount and duration of a maintenance award, and absent an abuse of discretion, its decision will not be reversed. *See* § 14-10-114(2), (3)(e); *see also In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14

(concluding that the revised statute intended "for the district court to retain broad discretion" over maintenance). However, we review de novo the court's interpretation and application of the law. *See Vittetoe*, ¶ 4.

¶ 37　　Section 14-10-114(3) specifies the process the district court must follow when considering a maintenance request. *In re Marriage of Wright*, 2020 COA 11, ¶¶ 14-16. "[T]he court must first make written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the reasonable financial need as established during the marriage, and the taxability of the maintenance awarded." *In re Marriage of Herold*, 2021 COA 16, ¶ 25; § 14-10-114(3)(a)(I).

¶ 38　　When, as here, the parties' combined annual adjusted gross income exceeds $240,000, the advisory guideline amount for maintenance under section 14-10-114(3)(b)(I) "does not apply." § 14-10-114(3.5); *Herold*, ¶ 26. The court must instead determine the maintenance amount based on the statutory factors enumerated in section 14-10-114(3)(c)(I)-(XIII). § 14-10-114(3.5); *Herold*, ¶ 26. As for the maintenance term, the court may consider the advisory guidelines. § 14-10-114(3.5).

¶ 39    Finally, the district court may award maintenance only if it finds that the party seeking maintenance lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs and is unable to support themself through appropriate employment before awarding maintenance. § 14-10-114(3)(3)(d); *Herold*, ¶ 27.

¶ 40    In awarding mother maintenance, the district court made the following findings:

- Father's monthly income totaled $19,756, including bonuses averaged from the last four years.

- Mother, a school counselor, was earning $5,416 per month.

- Maintenance was not to be deductible for federal income tax purposes or taxable income to the recipient.

- The parties have been married for over eleven and a half years.

¶ 41    The district court did not make several statutorily mandated findings under section 14-10-114(3)(a)(I), such as the financial resources of each party or the reasonable financial need as established during the marriage. Nor did the court make sufficient

18

findings pursuant to section 14-10-114(3)(c) to allow us to understand the basis for its maintenance ruling. *See Wright*, ¶ 20 ("[W]hile a district court has no obligation to make specific factual findings on every factor listed in section 14-10-114(3)(c), it must 'make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.'") (quoting *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9."). Nor did the court address whether mother "lacks sufficient property, including marital property apportioned to . . . her, to provide for . . . her reasonable needs and is unable to support himself or herself through appropriate employment . . . . *See* § 14-10-114(3)(d)

¶ 42    Because the district court failed to make certain mandatory findings and did not sufficiently explain the basis for the amount and duration of the maintenance award, we reverse and remand the case for complete findings. *See* § 14-10-114(3)(e); *see also Wright*, ¶ 20 (the district court must make sufficiently explicit findings of fact to give us a clear understanding of the basis of its decision); *In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997) (reversing where the district court's findings and "reasoning [were] unclear and d[id] not permit meaningful appellate review").

¶ 43    On remand, the district court must consider sections 14-10-114(3) and 14-10-114(3.5), making findings where required and addressing the factors relevant to its determination.  *See Herold*, ¶¶ 29-32.  The court must make sufficiently explicit findings of fact to give us a clear understanding of the basis of its order.  *See Wright*, ¶ 20.  And "[b]ecause maintenance is based on the parties' financial circumstances at the time the order is entered, the district court should consider the parties' then existing circumstances on remand."  *Id.* at ¶ 24.

¶ 44    Given our disposition, we decline to consider father's claims that the district court erred by not giving him credit for supporting mother during the dissolution proceedings.  *See* § 14-10-114(3)(c)(VIII).  Our decision to refrain from addressing that issue does not preclude the court, on remand, from considering any evidence the parties may present concerning it.

## V.    Disposition and Remand Instructions

¶ 45    The portion of the judgment awarding maintenance is reversed.  The case is remanded for the district court to reconsider mother's maintenance request, based on the parties' current financial circumstances, and to make specific findings in support of

20

any maintenance award.  In all other respects, the judgment is affirmed.

JUDGE FREYRE and JUDGE BROWN concur.