In re the MARRIAGE OF Robert F. BUR-
FORD, Deceased, by his Estate, Appel-
lant and Cross–Appellee,

and

Anne M. Burford, Appellee
and Cross–Appellant.

No. 99CA1781.

Colorado Court of Appeals,
Div. V.

May 10, 2001.

Dufford Waldeck Milburn & Krohn, LLP, Laird T. Milburn, Grand Junction, CO, for Appellant and Cross–Appellee.

Anne M. Burford, Denver, CO, for Appellee and Cross–Appellant.

Opinion by Judge ROTHENBERG.

In this dissolution proceeding, Anne M. Burford (wife) and the estate of her deceased husband, Robert F. Burford (husband's estate), appeal certain provisions of the property division entered by the trial court as permanent orders. We affirm in part, reverse in part, and remand with directions.

In 1992, the trial court entered a decree dissolving the parties' nine-year marriage, but permanent orders were deferred. Husband died two months before the 1993 permanent orders hearing, and his estate was substituted as a party to the dissolution proceeding.

At the permanent orders hearing, the trial court first determined whether the parties' assets were separate or marital. It then determined the increase in value of husband's separate property by subtracting the decrease in value of certain of his separate assets from the increase in value of other separate assets. After concluding that the net increase in value of husband's separate property was marital property, the court went on to divide the marital property by awarding wife assets worth $118,130, and awarding husband assets worth $43,286. The court found that this division was justified given that husband had separate assets exceeding $1.6 million.

Wife appealed from that division of property, contending, *inter alia,* that the dissolution action had abated upon husband's death. A panel of this court agreed, but the supreme court rejected her argument, *see Estate of Burford v. Burford,* 935 P.2d 943 (Colo.1997), and remanded the matter to the court of appeals for resolution of the remaining issues.

The division on remand held that the trial court had erred in calculating the increase in value of the husband's property during the marriage. The trial court had subtracted decreases in the value of his separate property during the marriage from the increases of such property, thus netting the gains and losses. *In re Marriage of Burford,* 950 P.2d 682 (Colo.App.1997).

The panel explained that increases in the value of a particular separate asset constitute marital property under § 14–10–113(4), C.R.S.2000, and that for this purpose, decreases in the value of the separate property should be disregarded. However, it stated that an increase or decrease in the aggregate value of separate property was an economic circumstance to be considered in the equitable division of the marital estate under § 14–10–113(1)(d), C.R.S.2000. The panel reversed and remanded the case to the trial court for reconsideration of the property division, instructing the trial court to recalculate the value of the marital property accordingly.

On remand, the trial court—with a different judge presiding—took no additional evidence. After hearing oral argument, the court entered the 1999 permanent orders at issue here.

The court on remand adhered to the basic valuations made by the original trial court at permanent orders, as well as the original court's proportional division of debt and its division of the marital property. Using separate charts, the trial court on remand found that: (1) husband had premarital assets that had *increased* in value during the marriage in the aggregate amount of $452,100; (2) the $452,100 constituted marital property and an equal division of it would be equitable; and (3) husband also had separate assets that had *decreased* in value during the marriage in the amount of $287,700. The court ordered that husband's estate pay wife $226,050 as her half of the increase in the value of his separate property.

The court further found that during the marriage, husband had used between $293,990 and $341,000 of the parties' marital funds to pay down or pay off his separate debts. Wife asserted that the resulting increase in the value of husband's separate property constituted marital property, but the trial court disagreed, concluding that husband's payments did not create an asset subject to division. The trial court reasoned that some of the separate assets had suffered a decrease in value even with the reduction in debt. Alternatively, the court found that even if the pay-down in debt were considered an increase in separate property, the entire increase should be allocated to the husband's estate because of husband's greater financial contribution to the marriage.

The court awarded husband's estate his separate assets, stating that it "[had] considered their decrease in value and their allocation to husband's separate estate in subsequently determining the division of the marital assets."

## I. Appeal by Husband's Estate

Husband's estate contends the trial court on remand erred by failing to follow the law of the case established in the original permanent orders and by failing properly to consid-

er the decrease in husband's separate property. We reject both contentions.

### A. Law of the Case

The estate maintains that wife never appealed the provision in the original permanent orders giving husband credit for the decrease in value of his·separate property. The estate characterizes wife's prior appeal as one challenging the process by which husband was given credit for the decrease. According to the estate, husband therefore must be given credit for the decrease in value of his separate property in the same manner as in the original permanent orders. We disagree with the estate's application of the law of the case doctrine.

 Under the law of the case doctrine, conclusions of an appellate court on issues presented to it, as well as rulings logically necessary to sustain such conclusions, become the law of the case and generally must be followed in subsequent proceedings in that case. *See Super Valu Stores, Inc. v. District Court,* 906 P.2d 72 (Colo.1995). The law of the case doctrine also applies to "the binding force of trial court rulings during later trial court proceedings." *People v. Roybal,* 672 P.2d 1003 (fn.5) (Colo.App.1983). However, application of the law of the case by a trial court to its prior rulings is a discretionary rule of practice. *Kuhn v. State Dept. of Revenue,* 897 P.2d 792 (fn.5)(Colo.1995).

In wife's appeal following the original permanent orders, she asserted that the trial court had erred in its calculation of the marital estate, and that decreases in the value of husband's separate assets should not have been deducted from the marital estate. She asserted that the decreases should have been taken into account only in the context of the equitable division of the marital property under § 14–10–113(1)(d).

The panel agreed and held that the decrease in value of the husband's separate property could not be considered when classifying property under § 14–10–113(4). The panel concluded that an overall, aggregate increase or decrease in separate property should be considered only for the purposes of the division of the marital estate if it affected the economic circumstances of the parties. *See In re Marriage of Burford, supra.*

 The panel addressed the issue of the decrease in separate property in terms of its effect on the calculation of the marital estate and the division of the marital estate. Thus, the panel's opinion is the law of the case and must be followed on remand. The trial court's original permanent orders lost any binding effect or precedential value when they were reversed on appeal.

Although the trial court on remand adopted portions of the original permanent orders insofar as they were not inconsistent with the panel's opinion, this was a discretionary decision made by the trial court on remand. It was not mandated.

We therefore reject the estate's argument that the trial court on remand erred in failing to follow the law of the case established in the original permanent orders.

### B. Increase or Decrease in Husband's Separate Property

 Husband's estate next contends the trial court erred in failing to give appropriate consideration to the decrease in the value of husband's separate property in dividing the marital estate, or alternatively, by failing to articulate its reason for not doing so. Again, we disagree.

In the first appeal, the trial court was instructed by the panel to consider a decrease in the value of husband's separate property in dividing the marital estate only if there was an overall decrease in the entire aggregate value of the separate property. *In re Marriage of Burford, supra.* If there was an overall increase in value, any specific decreases in his separate assets were irrelevant.

Because the parties disagree whether there was an increase or a decrease in the overall aggregate value of husband's separate property during the marriage, we must first address this issue.

Wife asserts there was an overall increase in husband's separate property and points to the trial court's finding on remand that the husband's "total separate property increased

in value during the marriage by $165,000." We assume the court reached this approximate figure by subtracting $287,700, which was the decrease in value of certain separate assets, from $452,100, which was the increase in value of the other separate assets.

Husband's estate, however, maintains that there was an overall decrease in his separate property during the marriage. According to the estate, the $452,100 increase in the value of the husband's separate assets became marital property under § 14–10–113(4), and once that increase became marital property, it could not be considered under § 14–10–113(1)(d) as an increase in the value of separate property affecting the equitable division of marital property. We reject the estate's argument, and conclude there was an increase in husband's separate property during the marriage.

■ Courts should attempt to give effect to all parts of a statute, and constructions that would render meaningless a part of the statute should be avoided. *See In re Marriage of Huff*, 834 P.2d 244 (Colo.1992). When statutes on the same subject are potentially conflicting, the court must reconcile the statutes, if possible, to avoid an inconsistent or absurd result. *In re Marriage of Ford*, 851 P.2d 295 (Colo.App.1993).

■ The provisions of the Uniform Dissolution of Marriage Act, § 14–10–101, et seq., C.R.S.2000, must be read *in pari materia* and the act must be construed to give consistent, harmonious, and sensible effect to all parts. *In re Marriage of Ford, supra.*

■ In dividing property, the trial court must first classify it as separate or marital. *In re Marriage of Sharp*, 823 P.2d 1387 (Colo.App.1991). As pertinent here, § 14–10–113(4) provides that an asset acquired prior to the marriage shall be considered as marital property to the extent that its present value exceeds its value at the time of the marriage.

Nevertheless, § 14–10–113(1)(d) provides that, in determining a just distribution of the marital estate, the court must consider— among other things-any increases or decreases in the value of the separate property or the depletion of separate property for marital purposes. *In re Marriage of Burford, supra.*

■ If we were to adopt the estate's construction of the statute, there would never be an increase in value of a separate estate to consider in dividing marital property, and we would render part of § 14–10–113(1)(d) meaningless. In order to give meaning to both statutes, we therefore conclude that when applying § 14–10–113(1)(d) to effect a just division of the marital estate, the court must consider an increase in the value of separate property without reference to the fact that the increase has just previously been classified as marital property under § 14–10–113(4).

This interpretation also furthers the objective of considering the economic circumstances of the parties at the time the division of property is to become effective. *See In re Marriage of Burford, supra* (noting the distinction in meaning between the two subsections).

Accordingly, we conclude the trial court on remand did not err in finding that there was a $165,000 *increase* in the value of the husband's separate property during the marriage. Because there was an increase, we reject the estate's claim that the trial court failed to give consideration to an aggregate decrease.

### II. Wife's Cross–Appeal

■ In her cross-appeal, wife contends the trial court's order on remand improperly divided the marital property and incorrectly valued and divided the marital debts. We agree that the trial court erred as a matter of law in considering the economic circumstances of the parties at the time of the dissolution, rather than at the time of the permanent orders. Given this error, we conclude the property division must be reconsidered as set forth below. We further conclude that the court must reconsider the value of husband's separate property, as well as its treatment of husband's litigation costs and a $100,000 line of credit. In addition, the court on remand should correct a clerical error.

## A. Law of the Case

As a threshold matter, we address the estate's assertion that wife's contentions on appeal are precluded by the doctrine of the law of the case. The estate asserts that, because the trial court on remand adopted the findings and conclusions contained in the original permanent orders, wife has already appealed the issues she now raises. Maintaining that these issues were decided adversely to wife in her first appeal, the estate asserts that she may not relitigate them here. We disagree.

The panel's decision in *In re Marriage of Burford, supra,* and those rulings on remand entered in conformity therewith, became the law of the case. *See Super Valu Stores, Inc. v. District Court, supra.*

As noted, the panel in the first appeal concluded that the trial court erred in valuing the marital estate, and it reversed and remanded the matter to the trial court with instructions to recalculate the value of the property and reconsider the property division. However, the panel did not address wife's contention that the trial court abused its discretion in dividing the marital property. To the contrary, the panel stated that: "[W]e do not decide whether the [trial] court abused its discretion in entering the present division order." *In re Marriage of Burford, supra,* 950 P.2d at 686.

The estate relies on a comment by the panel that:

This does not mean, necessarily, that, in light of all the circumstances to be considered, the court's division of property here was inequitable. However, because the court's division order was based upon a miscalculation of the value of the marital estate, a remand to the [trial] court for its reconsideration of this issue is required.

*In re Marriage of Burford, supra,* 950 P.2d at 686. The estate interprets this as an indication that the trial court on remand was bound to adopt the findings made in the original permanent orders. We disagree.

We conclude the panel was merely clarifying in dictum that any challenge to the equity of the property division had not been resolved on appeal and was to be reconsidered on remand. Accordingly, we reject the estate's contention that the law of the case precludes wife's arguments.

## B. Property Division

Turning to the merits of wife's cross-appeal, she first contends the trial court on remand erred with respect to the division of the marital estate. We agree that certain matters must be reconsidered.

Determinations as to the value of property are within the court's discretion and will not be disturbed if they are reasonable in light of the evidence as a whole. *In re Marriage of Antuna,* 8 P.3d 589 (Colo.App. 2000); *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995).

In dividing marital property, the court must consider all relevant factors including: the contribution of each spouse to the acquisition of marital property; the value of the property set apart to each spouse; the economic circumstances of each; and any increases or decreases in the value of the separate property of each spouse during the marriage or the depletion of separate property for marital purposes. Section 14–10–113(1), C.R.S.2000; *In re Marriage of Goldin,* 923 P.2d 376 (Colo.App.1996).

The trial court has broad discretion in the division of property under § 14–10–113, C.R.S.2000. The division must be equitable but need not be mathematically equal, and when supported by competent evidence it will not be disturbed on review. *In re Marriage of Eisenhuth,* 976 P.2d 896 (Colo. App.1999).

The weighing of the factors listed in § 14–10–113(1) is within the sound discretion of the trial court. *In re Marriage of Casias,* 962 P.2d 999 (Colo.App.1998).

### 1. Parties' Relative Contributions

Wife contends the trial court abused its discretion in finding that her contribution to the acquisition of marital property was outweighed by husband's contribution, in view of the contribution of her income to marital living expenses and the fact that she

gave up her career to be a homemaker. We disagree.

■ Under § 14-10-113(1)(a), C.R.S. 2000, the contributions of the spouses to the acquisition of the marital property should be considered. Those contributions may be different in character. *See In re Marriage of Huston*, 967 P.2d 181 (Colo.App.1998).

The trial court is also within its discretion in basing its findings on its own credibility determinations. *See In re Marriage of Antuna, supra* (in dividing property, sufficiency and credibility of the evidence are within the trial court's discretion, and determinations may not be disturbed unless they are unsupported by the record).

As relevant here, the trial court found that "the acquisition of marital assets was dominated by [husband]," that he had earned over $2 million during the marriage, and that he had spent it on marital and separate pursuits. The court also found that wife had earned approximately $250,000 which she spent primarily on separate pursuits. The court expressly considered wife's contributions as a homemaker.

Because the trial court's findings regarding the parties' contributions during the marriage are supported by the evidence and show sufficient consideration of this statutory factor, they will not be disturbed on appeal. *See In re Marriage of Goldin, supra.*

### 2. Parties' Circumstances at Permanent Orders

However, we agree with wife's contention that the trial court erred as a matter of law in considering the economic circumstances of the parties at the time of the dissolution, rather than at the time of the permanent orders.

■ Section 14-10-113(1)(c), C.R.S.2000, requires the trial court to consider the economic circumstances of the respective spouses at the time any hearing relating to the division of marital property is held. This includes a hearing following a remand for the purpose of dividing the property between the parties. *In re Marriage of Wells*, 850 P.2d 694 (Colo.1993).

Here, the dissolution preceded the permanent orders by almost a year. Nevertheless, the trial court on remand made certain findings regarding the circumstances of both parties *at the time of dissolution* and also how those circumstances had changed by the time of permanent orders.

To some extent, these findings were made as a means of comparing the two time periods. The court found that wife's net income had decreased due to husband's death and that maintenance had terminated. It also found that wife "is a licensed and capable attorney" and acknowledged that husband had passed away. However, the trial court also relied on circumstances that did not exist at the time of the permanent orders. Husband's death meant, of course, that he no longer had personal economic needs, and wife also asserts that she had not practiced law since June 1981 and had been unsuccessful in her search for employment.

Given this error of law, we conclude the property division must be reconsidered. On remand, the court should clarify that the order is based on the parties' economic circumstances at the time of permanent orders as the statute requires, and the court should make appropriate adjustments, if any are required, to the permanent orders. In the court's discretion, it may also take additional evidence. *See In re Marriage of Lee*, 781 P.2d 102 (Colo.App.1989).

### 3. Depletion of Separate Property

Wife next contends the trial court erred in failing to find that the depletion of husband's separate property was for nonmarital purposes. We disagree.

■ The depletion of separate property for marital purposes is a proper consideration in the division of property. Section 14-10-113(1)(d); *see In re Marriage of Huston, supra.* However, the statute does not require that the depletion for nonmarital purposes be considered.

■ Here, wife asserts that to consider depletion properly, the court must initially make a finding whether any depletion was for marital or nonmarital purposes. However, because she also claims there was no

evidence the depletion was for marital purposes, we conclude the court's failure to make findings as to this factor was harmless error. *See In re Marriage of Casias, supra* (court must make findings only as to those factors which form the basis for its property division). On remand, the court may make additional findings if they are appropriate.

4. Husband's Payment of Premarital Debt

Wife next challenges the trial court's treatment of husband's payment of his premarital debt with marital funds. She contends that the court erred in failing to add the increase in value of his separate assets resulting from the reduction in debt, that the allocation of this increase to husband resulted in an unjust and inequitable property distribution, and that the court's refusal to recalculate the marital debt violated § 14–10–113 by not including that debt in the distribution of marital property.

In a related contention, wife also asserts that the trial court failed adequately to consider the disparity between the amounts of separate property set aside to each spouse, and that it erroneously valued husband's separate property at approximately $1.5 million, whereas the evidence showed a value exceeding $2 million. Again, she contends there was an increase in value of husband's separate property resulting from his payment of separate debts with marital funds. We agree that reconsideration of the valuations is required.

The trial court on remand found that husband had paid approximately $341,000 in marital income to pay down or pay off his premarital debt. But, it rejected wife's contention that the use of this marital income constituted an increase in the value of his separate property.

The court found that some of the debts that were paid related to separate assets, including a mobile home park, which had decreased in net value during the marriage. Although wife asserts that the evidence shows the mobile home park had increased in value by the amount of the debt payment, which was $159,000, other evidence supports the court's finding.

The court in the original permanent orders found that the value of the mobile home park was the same as when the parties had married. However, the trial court on remand found there was a decrease in value.

As noted earlier, the panel in *In re Marriage of Burford, supra,* instructed the trial court on remand to value the property, and it was within the court's discretion to make different findings of fact on this issue on remand.

Nonetheless, we agree with wife that the court erred with regard to its treatment of husband's payment of his separate debt with approximately $341,000 of marital funds. Although the assets paid off by husband may not have increased in fair market value, husband's use of approximately $341,000 in marital funds to pay off his separate debts substantially increased his equity in his separate property and must be considered in the property division. Hence, it should be reconsidered on remand.

Income from separate property is marital property subject to division. *See In re Marriage of Foottit, supra.* In *In re Marriage of Jones,* 791 P.2d 1173 (Colo.App. 1989), a panel of this court held that where income from a discretionary trust was used to make mortgage payments on a residence that was the wife's separate asset, the increase in value of the wife's separate property resulting from those payments was marital property.

The supreme court reversed on other grounds, holding that a discretionary trust is not property, and therefore, that the income from the trust was not marital property. *In re Marriage of Jones,* 812 P.2d 1152 (Colo. 1991). In doing so, however, the supreme court did not address the issue before us.

As we read the order here, the trial court concluded—apparently as a matter of law—that the payment of husband's separate debt with marital funds did not increase the value of the separate property because such payment did not create a specific marital asset that could be divided. However, we disagree that the use of approximately $341,000 in marital funds to pay off one spouse's premarital debts requires that the

other spouse produce a marital "asset" capable of being divided. In our view, it is sufficient that the spouse paying off or paying down separate property received a benefit from the marital income such as increased equity in its own property. If so, the court should consider that benefit as an economic circumstance and equitably divide the benefit at permanent orders. *See* § 14–10–113(1)(c).

Here, the court did not consider the benefit for the reasons stated above. Nor are we persuaded by the trial court's alternative finding that, even if the debt payment had increased the value of husband's separate assets and had thereby created a marital asset subject to division, the marital property should be awarded to husband because of his greater financial contributions. The trial court on remand expressed its clear intention to effect a division roughly in accord with the original trial court's division, which was an equal division of the increase in the value of husband's separate property.

Given this statement of intent, there is no basis for the trial court's decision on remand to award husband's estate 100% of an asset arguably valued at $341,000, other than its erroneous conclusion that wife was required to identify an asset capable of being divided.

Further, in valuing the parties' separate property, the trial court valued husband's separate property at approximately $1.5 million, which did *not* include the payment with marital funds of approximately $341,000 in premarital debt. Wife urged the court to apply a value of $2 million, which included that $341,000. Hence, the large payment of husband's premarital debts with marital funds accounts for much of the difference.

■ Accordingly, we conclude the trial court must reconsider the value of the separate property set apart to husband after taking into account the benefit that husband's estate received by using the parties' marital income to pay off or pay down husband's premarital debt.

## C. Debts

Wife next contends the trial court on remand erred in the calculation and division of certain debts. We agree in part and disagree in part.

### 1. Debts Already Paid

■ Wife asserts that husband's litigation costs were erroneously allocated as debt because they had already been paid at the time of the original permanent orders. We disagree.

■ When debts have already been paid, they may be allocated in the property division through reimbursement. *See In re Marriage of Booker*, 811 P.2d 405 (Colo.App. 1990), *rev'd on other grounds*, 833 P.2d 734 (Colo.1992). Thus, the trial court did not err in this regard.

### 2. Litigation Costs as Debts

Wife next contends that husband's litigation costs for the dissolution were erroneously allocated as marital debts. She maintains that such litigation costs should have been allocated to husband under § 14–10–119, C.R.S.2000, because of the gross inequity in the parties' financial situations. We agree the costs of the dissolution must be reconsidered under the appropriate statutory framework.

■ On remand, the trial court recognized that the debts at issue "were incurred during the marriage and were largely associated with the dissolution litigation," but it divided the litigation costs under § 14–10–113. This was error. *See In re Marriage of Aldrich*, 945 P.2d 1370 (Colo.1997)(§ 14–10–119 is the applicable statute that permits courts to apportion attorney fees and costs based upon the relative economic circumstances of the parties in order to equalize their status and to ensure that neither party suffers undue economic hardship as a result of the proceedings); *In re Marriage of Bohn*, 8 P.3d 539 (Colo.App.2000); *see also In re Marriage of Huff*, *supra* (court may not incorporate attorney fee awards into other awards because attorney fee award is based on separate and distinct standards).

Accordingly, this issue also must be reconsidered by the trial court on remand. *See In re Marriage of McNamara*, 962 P.2d 330 (Colo.App.1998)(remand required for lack of

written findings of fact with respect to award under § 14–10–119).

### 3. Line of Credit

Wife next contends the trial court erroneously allocated as marital debt a $100,000 line of credit that husband used for separate purposes. She argues that husband made a "judicial admission" that it was his separate debt and that the court should be bound by this admission. We conclude further findings are necessary on this issue.

Judicial admissions are binding on the party who makes them, are evidence against such party, and may constitute the basis of a verdict. However, the alleged admission must also be unequivocal. *Highland Meadow Estates at Castle Peak Ranch, Inc. v. Buick*, 994 P.2d 459 (Colo.App.1999).

Property acquired between the date of the separation and the decree is marital. *See In re Marriage of Huff, supra* (court properly included in the marital property division the property acquired during the 11-1/2 years that the wife and husband lived apart). Allocation of marital debts is in the nature of property division, *In re Marriage of Speirs*, 956 P.2d 622 (Colo.App.1997), and the debts incurred during a predecree separation are also marital.

In 1992, before entry of the original permanent orders and in response to wife's request for a contempt citation, husband admitted in a court document that most of the $100,000 debt was his separate debt. He stated that:

> A simple telephone call to [husband's] counsel would have sufficed to inform [wife] that [husband] does not contend that any debt he has incurred since the separation of the parties is marital. . . .
>
> [Wife], at page 11 of her Disclosure Certificate, contends that the entire $100,000 debt to Norwest Bank Grand Junction is [husband's] separate debt. [Husband] agrees that the majority of such debt was incurred since separation of the parties, and *is his separate debt*. Determination of how much, if any, of such debt is marital, is to be made by the District Judge at the

time of Permanent Orders. (original emphasis)

Thus, husband made an unequivocal admission that the majority of the debt was his separate debt while leaving open the possibility that a minority portion would be found by the court to be marital.

Given his judicial admission in these court proceedings, we conclude the trial court erred in characterizing all of the $100,000 debt as marital.

### 4. Mortgage Debts

Next, wife asserts that the trial court erred in allocating to her the mortgage debts on the residence. She contends that when the residence was awarded to her, the assigned value was the equity after taking into account the debt, and that between the time of the original permanent orders and the permanent orders on remand, she refinanced the debt. We do not address this issue.

Wife raised this issue in her motion for redivision of assets made after the remand from this court. At the hearing on remand when the court questioned her regarding the value of the residence and associated debt, she stated:

> I haven't made an issue of those two items [the first and second mortgages] on the debt column. They shouldn't have been there because I was awarded the equity net of debt. . . . And that's why I have not made it an issue, it was awarded *net of debt*.

Accordingly, on this record, wife may not now raise this issue on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992)(arguments never presented to, considered, or ruled upon by a trial court may not be raised for the first time on appeal).

### 5. Valuation of Stock

Wife's final contention is that the trial court on remand made a clerical error in the valuation of the stock. We agree the error should be corrected.

In the chart setting forth the premarital assets that had increased or had not

changed in value, the column for husband's marital portion adds up to $242,050, not the $226,050 entered on the chart. On remand, the court shall recalculate the amounts to reflect its intent. *See Diamond Back Services, Inc. v. Willowbrook Water & Sanitation District,* 961 P.2d 1134 (Colo.App.1997)(correction of clerical errors is limited to cases in which the trial court originally intended to make the award granted by corrective amendment).

### III. Attorney Fees Incurred on Appeal

We conclude that the estate's appeal was not frivolous, and we therefore deny wife's request for appellate attorney fees pursuant to C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo. 1993).

The judgment is affirmed in part, reversed in part, and remanded for further proceedings in accordance with the views set forth in this opinion.

TAUBMAN and ROY, Judges, concur.