24CA1715 Marriage of Madeo 09-25-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1715
Douglas County District Court No. 21DR30648
Honorable Charles Pratt, Judge

---

In re the Marriage of

Nicholle Madeo n/k/a Nicholle Taylor,

Appellant,

and

Jerad Madeo,

Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

---

Bam Family Law PC, Heather S. Broxterman, Kayla S. Quinn, Denver, Colorado, for Appellant

The W Law, Carolyn Witkus, Jon Eric Stuebner, Denver, Colorado, for Appellee

¶ 1     In this divorce case involving Nicholle Madeo (wife) and Jerad Madeo (husband), wife appeals the permanent orders regarding property division and attorney fees.  We affirm.

## I.     Relevant Facts

¶ 2     After thirteen years of marriage and two children, wife filed for divorce in August 2021.  At that time, husband was president of Rocky Mountain Empire Electric (RMK Electric), a business he started with a friend before the marriage.

¶ 3     The district court held a six-day permanent orders hearing in December 2023.  The parties stipulated that, at the time of the marriage, husband's 75% ownership interest in RMK Electric was worth $465,000.  The court accepted the joint experts' income capitalization method to determine the present value of his interest.  After making certain adjustments, the court valued his share at $3,448,401, resulting in marital appreciation of $2,983,401.  The court divided the rest of the $9.9 million marital estate and ordered husband to make an equalization payment of $2,854,481 to wife.  The court excluded wife's unpaid $305,930 in attorney fees from the property division, classifying it as her separate obligation.

¶ 4    Wife moved for post-trial relief, arguing that RMK Electric's value should have included $1.4 million in "excess working capital" that was "not needed to operate the company on a day to day basis" and that her outstanding attorney fees should have been divided as a marital debt.

¶ 5    The district court denied the motion.  While the court acknowledged that excess working capital was a proper consideration in valuing a business, it found that RMK Electric's cash reserves had dropped significantly and that any remaining excess working capital was minimal by the hearing date.  The court also declined to change its decision on wife's attorney fees.

## II.    Excess Working Capital

¶ 6    Wife maintains that the district court undervalued RMK Electric by failing to account for roughly $1.4 million in "excess working capital" that should have been included as a tangible asset of the business.  We disagree.

¶ 7    Valuing property is within the district court's discretion, and we will not disturb its valuation if it is reasonable in light of the evidence as a whole.  *In re Marriage of Krejci*, 2013 COA 6, ¶ 23. The court may adopt either spouse's valuation or make its own, and

its decision will be upheld if supported by the record. *See id.*; *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

¶ 8     The parties hired joint experts to determine the present value of husband's interest in RMK Electric. Applying the capitalized economic income method, their report valued RMK Electric as of November 2022. In assessing RMK Electric's present value, one joint expert testified that as of November 2022, the business had roughly $1.4 million in excess working capital. *See In re Radiology Assocs., Inc. Litig.*, 611 A.2d 485, 495 (Del. Ch. 1991) ("Excess working capital is the amount of working capital beyond the amount an entity needs to fund its business."). But the expert was unsure whether that excess working capital was still available at the time of the permanent orders hearing — which occurred more than a year after valuation date. The expert speculated that $1.4 million in excess working capital might remain when the hearing occurred, but emphasized that a business must be valued based on its financial condition at the time of the hearing.

¶ 9     One of husband's rebuttal experts testified that RMK Electric currently did not have excess working capital, given the business's ongoing burn rate and recent underperformance. Another rebuttal

expert indicated that by June 2023 — six months before the hearing — RMK Electric had no excess working capital but instead had a deficit of $37,543. That expert also said that Wells Fargo's "loan covenants" required minimum reserves, leaving no discretionary funds.

¶ 10 Wife's own rebuttal expert admitted that the "majority" of the business's excess working capital in November 2022 likely no longer existed by the time of the hearing.

¶ 11 While the district court acknowledged that excess working capital is a proper consideration in valuing a business, it found that the "weight of the credible evidence convinc[ingly]" showed that RMK Electric's "burn rate" had reduced the excess to a "negligible" amount by the time the hearing took place. The court explained that it could not calculate the exact amount but found it was far less than the $1.4 million claimed. *See Krejci*, ¶ 23 (parties must present relevant evidence to the court, and their failure to do so does not provide grounds for reversal); *see also In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (the district court is required to consider the evidence presented to it; it does not act as

4

a surrogate attorney).  Because those findings have record support, we will not disturb them.  *See Krejci*, ¶ 23.

### III.    Wife's Outstanding Attorney Fees

¶ 12    Wife also contends that, by "declining to account for the significant and reasonable marital expense" of her unpaid attorney fees in the "[m]arital [b]alance [s]preadsheet" or to award fees under section 14-10-119, C.R.S. 2025, the district court inequitably "forc[ed] her to pay the debt from her portion" of the property division.

¶ 13    A district court has broad discretion in granting attorney fees and costs under section 14-10-119, and we will not disturb its decision on appeal absent an abuse of discretion.  *In re Marriage of Aragon*, 2019 COA 76, ¶ 8.

¶ 14    Section 14-10-119 provides, in relevant part, as follows:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article . . . and for attorney fees . . . including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

¶ 15    The statute empowers the district court to equitably apportion fees and costs between the parties based on their relative ability to pay. *In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006). The purpose of any award under section 14-10-119 is to equalize the parties and ensure neither party suffers undue economic hardship because of the divorce. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo. 1997). To that end, the court must evaluate the parties' overall economic circumstances. *See In re Marriage of Evans*, 2021 COA 141, ¶ 73.

¶ 16    "Litigation costs" incurred and paid before permanent orders may be allocated in the property division under section 14-10-113, C.R.S. 2025, through reimbursement. *In re Marriage of Burford & Hughes*, 26 P.3d 550, 559 (Colo. App. 2001).

¶ 17    However, unpaid "litigation expenses," like attorney fees, fall within the purview of section 14-10-119. *See id.*; *see also In re Marriage of Rieger*, 827 P.2d 625, 625 (Colo. App. 1992) ("[W]e find no authority for the characterization of . . . attorney fees as a non-challengeable marital debt under § 14-10-113 . . . ."). *Burford* suggests that this distinction promotes the equitable purpose of section 14-10-119, which is to equalize the parties' status and

6

ensure that neither party suffers undue economic hardship because of the divorce. *See Burford*, 26 P.3d at 559; *see also Gutfreund*, 148 P.3d at 141 (recognizing that section 14-10-119 serves an equitable purpose).

¶ 18 Applying that framework, the district court correctly treated wife's unpaid fees as her separate obligation under section 14-10-113 and excluded them from the property division. *See Aragon*, ¶ 8. Fees not sought under section 14-10-119 are not compensable as part of the marital estate. *See Burford*, 26 P.3d at 559.

¶ 19 Moreover, wife did not preserve the contention that the district should have exercised its discretion under section 14-10-119. *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 38 (to preserve an issue for appeal, the issue must be brought to the district court's attention and the court must have an opportunity to rule on it); *see also Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 26 (only specific arguments made to the district court are preserved for appeal). Although her attorney fees remained unpaid at the time of the permanent orders hearing, triggering section 14-10-119, she did not seek a fee award under that statute. Instead, in the joint trial management certificate and her later proposed

7

written permanent orders, she asserted that her fees "should be treated as a marital debt and allocated to [her] as an equitable division of the marital estate, given the parties' relative circumstances." True, she cited section 14-10-119. But her stated approach treated the fees as a marital debt under section 14-10-113. She even anticipated that husband would challenge the reasonableness of her fees and would argue that the fees "should not be fully included in the [c]ourt's division of the parties' marital estate," confirming that she framed the issue as a property division matter. Because she did not ask the court to exercise its discretion under section 14-10-119, she cannot now fault the court for failing to do so. *See Core-Mark Midcontinent Inc.*, ¶ 26.

## IV.    Appellate Attorney Fees

¶ 20    Husband requests appellate attorney fees under C.A.R. 39.1 and section 13-17-102, C.R.S. 2025, asserting that wife's appeal is simply an attempt to extract more money from him. Although wife did not prevail, we do not consider her contentions to be so lacking in merit that they indicate frivolity or bad faith. *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed

8

toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

## V.    Disposition

¶ 21    The judgment is affirmed.

JUDGE J. JONES and JUDGE SCHUTZ concur.