24CA1396 Marriage of Allen 06-25-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1396
Douglas County District Court No. 22DR258
Honorable Benjamin Figa, Judge

In re the Marriage of

Daniel J. Allen,

Appellee,

and

Cecelia J. Allen,

Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE WELLING
Román, C.J., and Grove, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

Epstein, Patierno, LLP, Courtney J. Leathers Allen, Denver, Colorado; Anne
Whalen Gill, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Appellant

¶ 1    In this dissolution of marriage case between Cecelia J. Allen (wife) and Daniel J. Allen (husband), wife appeals the marital property division portion of the permanent orders judgment. We affirm and remand the case for further proceedings on wife's request for appellate attorney fees.

## I.    Background

¶ 2    The parties were married in 1998. They had four children. At the time of this appeal, only the youngest child had not yet emancipated. Husband petitioned for dissolution, and the district court issued temporary orders.

### A.    Temporary Orders

¶ 3    The court's temporary orders authorized husband to withdraw funds from his Vanguard 401(k) account (the Vanguard account) to pay the parties' debts. The court ordered husband to "continue paying all household expenses including but not limited to the mortgage and utilities, bills, and insurance he paid during the marriage." And he was required to pay wife, for the first three months, $2,166 monthly in temporary maintenance. After the first three months, he was to pay her $2,639 in monthly maintenance until permanent orders entered. Husband was also required to

1

transfer $10,000 into his attorney's COLTAF account, to be used to pay maintenance to wife for the first three months.

¶ 4    Four months after the court issued temporary orders, wife filed a motion for a contempt citation against husband, alleging that he had failed to comply with temporary orders. The court issued the citation and combined the hearing on wife's contempt motion with the permanent orders hearing. As discussed further in Part II.D below, the court ultimately denied wife's contempt motion.

## B.    Permanent Orders

¶ 5    At the conclusion of the permanent orders hearing, the court entered a decree dissolving the parties' marriage.

¶ 6    Two days after the permanent orders hearing, the court made its oral findings of fact and conclusions of law on the record. In its oral ruling, the court made findings regarding the value of the parties' assets and debts and allocated the marital property, purporting to do so equally. Specifically, the court allocated to wife the marital home; two cars; a bank account; and the marital business, valued at $2,800; and certain personal property. The court allocated to husband a second home in Florida; one car; a second bank account; and certain personal property.

¶ 7     The court allocated all marital debt to husband.  This marital debt included the outstanding attorney fees each party owed their respective attorneys, as well as the full amount of five outstanding promissory notes husband had executed in favor of certain family members and friends.

¶ 8     In its oral ruling, the court said that it understood that "the marital property that [it] allocated to [h]usband is substantially less than" what it allocated to wife, so it ordered that, "to the extent that there is a discrepancy or a difference" in the value of the marital assets allocated between the parties, an equalization payment would come from the Vanguard account.  The parties stipulated that the market value of the Vanguard account was $587,288 at the time of the permanent orders hearing.

¶ 9     The court ordered both parties to prepare a spreadsheet reflecting their respective understandings of the court's findings regarding valuation of marital property and debt and the court's orders allocating such property and debt.  Both parties did so within a week of the court's oral ruling.  The parties also agreed to have the district court adopt the transcript of its oral ruling as the permanent orders.

3

¶ 10    The transcript of the oral ruling took four months to prepare. In February 2024, three months after the transcript was prepared, the court held a status conference, after which it entered the written permanent orders, which included adopting husband's spreadsheet as part of those orders.

### C.    Post-Trial Motions and Notice of Appeal

¶ 11    At the February 2024 status conference, both parties agreed that they would need a transcript of the entire permanent orders hearing in order to prepare and file post-trial motions. Based on this representation, the district court ordered that any post-trial motions be filed within fourteen days of the parties' receipt of that transcript.

¶ 12    After receiving the transcript, wife timely filed a C.R.C.P. 59 motion to amend the court's permanent orders (the April motion). The district court summarily denied the April motion for lack of conferral pursuant to C.R.C.P. 121, section 1-15(8).

¶ 13    In June 2024, wife filed a second motion to amend the court's judgment pursuant to C.R.C.P. 59 and 60(b)(1) (the June motion). In the June motion, wife contended that she had properly conferred before filing the April motion. Before the district court issued an

order resolving the June motion, wife filed a timely notice of appeal in this court appealing the permanent orders.

¶ 14     The district court, in an order indicating it took no action, concluded that, given the pending appeal, it lacked jurisdiction to consider wife's June motion. In August 2024, wife filed a motion to reconsider this order pursuant to C.R.C.P. 59 (the August motion), which the court denied.

¶ 15     Wife then filed a motion to amend her notice of appeal to include the court's orders regarding her June and August motions. She also filed a request for a limited remand for the court "to consider the relief requested under Rule 60(b)(1) — that [w]ife's counsel's mistake, inadvertence, or excusable neglect regarding conferral about the post-trial motion . . . should not negate the [t]rial [c]ourt's consideration of [w]ife's timely [April motion]." A motions division of this court denied these requests.

## II.     Issues on Appeal

¶ 16     On appeal, wife contends that the district court erred by (1) not reopening the evidence to consider changes in asset values in the seven months between the bench ruling and the entry of permanent orders; (2) denying her post-trial motions; (3) adopting

5

husband's spreadsheet, which double-counted some debt; and (4) limiting time for the parties to present evidence at the combined permanent orders and contempt hearing. Wife also requests an award of her appellate attorney fees.

## A.    Reopening of the Evidence

¶ 17    Wife first contends that the court abused its discretion when it declined to reopen the evidence to consider changes in the value of certain assets during the seven months between the permanent orders hearing and the court's entry of written permanent orders. We aren't persuaded.

### 1.    Relevant Law

¶ 18    Generally, property is valued as of the date of the decree or the date of the hearing on the disposition of property, whichever is earlier. § 14-10-113(5), C.R.S. 2025. Under certain circumstances, a district court may reopen evidence. *In re Marriage of Medeiros*, 2023 COA 42M, ¶¶ 10, 16.

¶ 19    As discussed in *Medeiros*, a district court has the discretion to consider a party's request to reopen the evidence after the permanent orders hearing but before the entry of permanent orders based on changed economic circumstances. *Id.* In determining

6

whether to do so, it must consider certain factors, one of which is "the length of the court's delay in issuing permanent orders." *Id.* at ¶ 22.

## 2.    Analysis

¶ 20    Wife argues that the holding in *Medeiros* required the court to reopen the evidence. We acknowledge that the facts from *Medeiros* bear some similarities to this case. As in *Medeiros*, the final judgment here had not yet been reduced to writing when wife's counsel asked the court to reopen the evidence. *See also In re Marriage of McSoud*, 131 P.3d 1208, 1221 (Colo. App. 2006) (concluding that a court may modify its oral findings or orders any time before issuing a final order). As in *Medeiros*, many months had passed between the permanent order hearing and the court's issuance of its final written orders. *Medeiros*, ¶ 2. And, in both cases, the motion to reopen was based on allegations that the opposing party had experienced "substantially changed" economic circumstances. *Id.* at ¶¶ 2, 6.

¶ 21    The similarities end there, however. In *Medeiros*, after a contested permanent orders hearing, the court didn't issue an oral ruling and took the matter under advisement for seven months. *Id.*

at ¶ 5. Here, on the other hand, just two days after the close of evidence, the court set forth its permanent orders in an on-the-record oral ruling, and, with the parties' express agreement, it informed them that the final order would be the adoption of a transcript of that ruling. The delay in issuing the written order hinged, in substantial part, on a delay in producing the transcript, not on the court's continued deliberation of the substance of its ruling. Indeed, the court had already informed the parties of the substance of its permanent orders. The final order was, therefore, not substantially delayed as in *Medeiros*. Under these circumstances, we perceive no abuse of discretion in the court's determination that reopening of the evidence was unnecessary.

## B. Post-Trial Motions

¶ 22 Next, wife contends that the district court erred by (1) failing to resolve her April motion on the merits and (2) concluding that it lacked jurisdiction over her June motion. She claims these errors were "compounded" by the motions division's denial of her motion to amend the notice of appeal to include the denial of the June motion. We perceive no error.

8

¶ 23    As to her first contention, the district court didn't abuse its discretion by denying wife's April motion for a lack of conferral.  The court properly applied C.R.C.P. 121, section 1-15(8), which — subject to limited exceptions not applicable here — requires conferral before filing any motion.  In her April motion, wife didn't indicate that she had conferred, nor did she point to anything in the record indicating that conferral had taken place.  Indeed, wife admitted in the motion that "additional conferral was not conducted."  And we perceive no abuse of discretion in the court's denial of the April motion on this basis.  *See* C.R.C.P. 121, § 1-15(8) (providing that "moving counsel . . . *shall* confer with opposing counsel . . . before filing a motion" and "[t]he motion *shall*, at the beginning, contain a certification that the movant in good faith has conferred with opposing counsel . . . about the motion" (emphasis added)); *see also Walton v. People*, 2019 CO 95, ¶ 13 ("'Shall' is mandatory unless there is a clear indication otherwise.").

¶ 24    Wife's contention that the district court erred as a matter of law when it denied wife's June motion for lack of jurisdiction doesn't fare any better.  Wife relies on C.A.R. 4(a) for her contention that the court retained jurisdiction to rule on her June motion

notwithstanding that she had already filed her notice of appeal. C.A.R. 4(a)(3) provides that "[t]he lower court continues to have jurisdiction to hear and decide a motion under C.R.C.P. 59 regardless of the filing of a notice of appeal, provided the C.R.C.P. 59 motion is *timely filed under C.R.C.P. 59(a)*." (Emphasis added.) Wife's contention fails because the June motion wasn't timely filed under C.R.C.P. 59(a). The only timely Rule 59 motion that wife filed was her April motion, which, as discussed above, was properly denied. Because the June motion wasn't a timely C.R.C.P. 59 motion — and it was filed after an appeal had been perfected — the court properly declined to resolve the motion for lack of jurisdiction. *See Musick v. Woznicki*, 136 P.3d 244, 246 (Colo. 2006) ("Generally, the filing of a notice of appeal shifts jurisdiction to the appellate court, thus divesting the trial court of jurisdiction to conduct further substantive action related to the judgment on appeal.").

¶ 25 Accordingly, we perceive no error by the court in its disposition of wife's post-trial motions and, therefore, also reject wife's contention that the motions division's denial of her motion to

10

amend the notice of appeal to include the denial of her June motion compounded any error.

## C. Husband's Spreadsheet

¶ 26    Next wife contends that the court erred when it adopted husband's spreadsheet because by doing so the court "double-counted" husband's attorney fees, on the one hand, and the debts evinced by the promissory notes to his friends and family members, on the other hand. Specifically, wife contends that because there was testimony at the permanent orders hearing that husband used some portion of the proceeds from the personal loans to pay his attorney fees, the court double-counted "some $60,000 in [h]usband's debt column" by counting both his attorney fees and the promissory notes as marital debt. We disagree that the record establishes that the court clearly erred by double-counting husband's attorney fees and the promissory notes as debt.

### 1. Relevant Law

¶ 27    A district court has great latitude to equitably distribute marital property based upon the facts and circumstances, and we won't disturb its decision absent a clear abuse of discretion. *Medeiros*, ¶ 28. A court abuses its discretion when its decision is

manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law. *Id.*

¶ 28      Pursuant to section 14-10-113(1), a district court divides marital property in such proportions as it deems just, considering all relevant factors including the contributions of each spouse to acquiring the property, the value of the property set apart to each spouse, the spouses' economic circumstances, and any increases or decreases in a spouse's separate property during the marriage or depletions of separate property for marital purposes. *In re Marriage of Powell*, 220 P.3d 952, 959 (Colo. App. 2009). But it's inequitable for a court to count the same asset or debt twice when determining an equitable division of marital property. *Cf. In re Marriage of Cardona*, 2014 CO 3, ¶ 40 (Boatright, J. concurring in the judgment) (concluding that it was inequitable for the district court to count twice the accrued leave of an employee spouse, first as a marital asset subject to division, and second as income for purposes of maintenance and child support).

### 2.    Additional Facts

¶ 29      As noted above, the court allocated all of the parties' marital debts to husband. According to the spreadsheet, the amount of the

debt allocated to husband totaled $275,806.[1]  These debts included,

among other things, outstanding attorney fees for both husband

and wife and debts owed to various family and friends of husband,

as evinced by five promissory notes executed by husband.

¶ 30    Both parties were represented by multiple attorneys and law

firms during the course of the litigation.  The court allocated each

party's outstanding attorney fees as debt.[2]  The amount of debt

allocated to husband for wife's outstanding attorney fees totaled

$55,647 and was listed on the spreadsheet under the heading

"Cecelia's Attorney Fees."  From the record, it appears that this sum

---

[1] This sum is the total marital debt exclusive of the two mortgages encumbering the two marital homes.  Each party was allocated one of the homes (along with the debt encumbering that home).

[2] Although generally "[m]arital liabilities include all debts that are acquired and incurred by a husband and wife during their marriage," *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo. App. 2006), a debt for attorney fees associated with the dissolution proceeding incurred during the marriage shouldn't be allocated as a marital debt, *see In re Marriage of Burford*, 26 P.3d 550, 559 (Colo. App. 2001); *In re Marriage of Rieger*, 827 P.2d 625, 625 (Colo. App. 1992).  Rather, such outstanding attorney fees should be apportioned in accordance with section 14-10-119, C.R.S. 2025. *See Burford*, 26 P.3d at 559; *Rieger*, 827 P.2d at 625.  On appeal, wife doesn't challenge the propriety of the court's allocating the parties' outstanding attorney fees as debt; thus, we don't offer any opinion regarding the propriety of the court's allocating both parties' outstanding attorney fees as debt.

was the aggregate of outstanding fees that wife owed to more than one law firm that represented her during the course of the proceedings.

¶ 31 The marital debt associated with husband's outstanding attorney fees was listed on the spreadsheet under the heading "Sherman & Howard" and totaled $59,410. Attorneys from Sherman & Howard represented husband at the permanent orders hearing, but they weren't the first attorneys to represent husband in this case. And no other attorney fees paid or owed by husband to any other attorney or law firm were listed or allocated as marital debt.

¶ 32 The court also allocated to husband a total of $44,774 in debt evinced by five promissory notes. Those promissory notes were from husband to his

- mother for $18,350;
- older sister for $1,667;
- friend for $20,240;
- roommate for $850; and
- younger sister for $3,667.

### 3. Analysis

¶ 33    Wife contends that the court erred by adopting husband's spreadsheet because by doing so it "double counted" husband's attorney fees and the debts evinced by the promissory notes to his friends and family members. Wife says this is so because the record establishes that the proceeds of the loans evinced by the promissory notes were used to pay husband's attorney fees that the court also counted as debt. We disagree.

¶ 34    To be sure, there was testimony at the permanent orders hearing that husband used some portion of the proceeds of the loans from family and friends to pay his attorney fees. But the record doesn't establish that the fees paid with the loan proceeds were the same fees that the court allocated as debt (i.e., those owed to Sherman & Howard). Instead, the record appears to support that to the extent that husband used a portion of the loan proceeds to pay his attorney fees, those were for fees paid to *other* attorneys who represented him (or whom he consulted with) over the course of the dissolution proceedings — not Sherman & Howard. Indeed, husband testified that "the money I borrowed from them was for the retainer for *my first* attorney." (Emphasis added.) The friend who

15

loaned husband approximately $20,000 similarly testified that he "believe[d]" that husband had used the proceeds of his loan to "pay for his *first attorney*." (Emphasis added.) Thus, based on the evidence in the record, we can't say that the court clearly erred by "double counting" husband's attorney fees and the debt evinced by the promissory notes.

¶ 35    Moreover, the sum allocated as debt husband owed to Sherman & Howard appears to be the sum husband actually owed to Sherman & Howard through the date of the permanent orders hearing. The court's calculation of $59,410 as the amount of husband's outstanding attorney fees appears to be based on a fee affidavit executed by trial counsel a few days before the permanent orders hearing. According to the affidavit, the $59,410 figure included not only what husband had already been billed by Sherman & Howard, but also the "estimated time to complete" the proceedings through permanent orders. And the invoices appended to the affidavit show that husband was carrying forward the full amount he owed to Sherman & Howard each month. In other words, the documents from Sherman & Howard reflect that the

entirety of that law firm's bill remained outstanding.[3]  And because the record reflects that husband hadn't paid anything to Sherman & Howard, we can't say that the court clearly erred in calculating husband's debt.  After all, husband couldn't have used loan proceeds to pay a debt *he still owed*.  Simply put, according to the evidence in the record, at the time of the permanent orders hearing, husband owed $59,410 to Sherman & Howard *and* $44,774 to friends and family.  Accordingly, we don't discern a basis for reversal based on an alleged double-counting.

---

[3] To the extent there was some evidence in the record that husband may have paid something to Sherman & Howard from any of the personal loan proceeds, it was that he may have used a portion of the proceeds from the friend who loaned him $20,240 to pay a $10,000 retainer to Sherman & Howard.  The evidence on this issue is unclear, so we can't say that the court clearly erred by failing to account for it.  But even assuming there was a $10,000 discrepancy, this would have affected the equalization payment by $5,000 (as the court stated it was dividing the marital estate equally).  And because such an error would have affected the overall allocation of the $1.3 million marital estate by less than one half of one percent, such an error wouldn't be grounds for reversal.  *See* C.R.C.P. 61 (no defect in any ruling or order is ground for disturbing a judgment or order unless it affects the substantial rights of the parties); *cf. In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001) ("If . . . a trial court's error affects only a small percentage of the overall marital estate, such an error may be deemed to have been harmless and thus does not require reversal.").

## D. Time Limitations at the Hearing

¶ 36    Wife next contends that the court violated her right to due process by imposing and enforcing a time limit on the presentation of evidence during the July 2023 hearing. We perceive no due process violation.

### 1. Additional Facts

¶ 37    As previously discussed, after temporary orders were issued — and allegedly violated — wife filed a motion for the issuance of a contempt citation against husband. Wife alleged that husband had failed to pay bills, paid incorrect amounts of temporary maintenance to her, and failed to set aside $10,000 from the Vanguard account to pay maintenance. She also alleged that husband violated the mandatory injunction, *see* § 14-10-107(4)(b), C.R.S. 2025, by "molesting or disturb[ing] the peace of [w]ife and the two minor children throughout this case," and by shifting the deposit of his monthly salary from the parties' joint bank account to one in his own name without her permission.

¶ 38    Two and a half months before the permanent orders hearing, the court set a hearing on wife's contempt motion. At that time, the court allocated one hour for each side to present their respective

18

evidence and argument. Two days before the scheduled contempt hearing, however, the parties filed a joint motion to continue the contempt hearing, which the court granted. In consultation with the parties and without objection, the court combined the contempt hearing with the permanent orders hearing. Before the combined hearing commenced, the court informed both parties that they would each be provided with two hours and twenty minutes to present their evidence on both the permanent orders and contempt. Neither party objected to these time limitations.

¶ 39 During the course of the hearing, the court tracked the parties' time and periodically informed them of how much time each side had remaining. After wife's time ran out during her permanent orders testimony, the court afforded both sides an additional seventeen minutes to present their evidence. Wife's time expired before she presented any evidence in support of her contempt motion.

¶ 40 After wife's counsel had used all of her time without presenting evidence related to the contempt, she requested more time to present the contempt evidence (or that the contempt issue be set over to another day). The court denied this request. Because

19

the court had not heard any contempt evidence, it denied the citation for contempt against husband.

## 2. Relevant Law

¶ 41 The opportunity to be heard is an inherent element of due process, *In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007), and parties are entitled to be afforded sufficient time to make an orderly presentation of their case, *In re Marriage of Pawelec*, 2024 COA 107, ¶ 29; *In re Marriage of Finer*, 893 P.2d 1381, 1389 (Colo. App. 1995). Still, the court may set a time limit on a hearing from the outset and monitor the parties' use of their time during the hearing. *Pawelec*, ¶ 30; *see also Maloney v. Brassfield*, 251 P.3d 1097, 1102-05 (Colo. App. 2010); CRE 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time . . . ."). But "[t]he trial court's interest in administrative efficiency may not take precedence over a party's right to due process." *Pawelec*, ¶ 30 (citing *Hatton*, 160 P.3d at 329).

¶ 42 Because due process is implicated, we apply a heightened level of scrutiny to determine whether the district court's time limits

20

constituted an abuse of discretion at two levels: whether the limits were inadequate for the nature of the proceeding at the outset, and if not, whether they became inadequate because of developments during the proceeding. *Id.* at ¶ 31 (citing *Maloney,* 251 P.3d at 1102). For the reasons discussed below, we conclude that the district court didn't abuse its discretion in setting time limits or by denying wife's counsel's request for additional time.

### 3.    Analysis

¶ 43    First, nothing in the record suggests that the time limits the district court imposed were inadequate for the nature of the proceeding at the outset. The record suggests that, leading up to the hearing, wife considered the amount of time set aside for the hearing to be adequate. Specifically, wife didn't dispute before the district court, nor does she dispute here, that a one-day hearing was sufficient time to address the issues related to permanent orders and contempt. And she doesn't dispute that the parties agreed to the time limits the court imposed, both when the contempt hearing was first set and when it was combined with the permanent orders hearing. *See Maloney,* 251 P.3d at 1103 (considering whether time constraints resulted in unfair surprise).

21

¶ 44    Second, nothing in the record suggests that the time limits the court imposed became inadequate because of developments during the hearing. Wife's counsel was permitted to make her own strategic decisions concerning witness presentation. *See Pawelec,* ¶ 32. Wife's counsel called only one witness — wife — and was reminded of her remaining time, including its impact on her ability to present evidence related to the contempt issue.

¶ 45    Further, the district court adjusted the amount of time given to both sides as the hearing progressed. The court afforded equal time to both sides, and once the hearing was underway, it granted both sides additional time. *Cf. In re Marriage of Goellner*, 770 P.2d 1387, 1388 (Colo. App. 1989) (concluding that the district court abused its discretion by not granting wife additional time where husband presented his case first and, after cross-examination, wife had only thirty minutes to present her case-in-chief); *see also Maloney*, 251 P.3d at 1104-05 (considering district court's flexibility).

¶ 46    For these reasons, we perceive no error in the length of the hearing set by the court or the court's denial of wife's additional request for more time to present her contempt case.

22

## III. Attorney Fees

¶ 47    Husband contends that he is entitled to an award of his appellate attorney fees pursuant to C.A.R. 39.1 and section 13-17-102(2), C.R.S. 2025, arguing that wife's appeal is frivolous and groundless.  Although wife didn't prevail, wife's arguments on appeal were neither frivolous nor groundless.  *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.  Accordingly, we deny husband's request for an award of his appellate attorney fees.  Husband, as the prevailing party, is, however, entitled to an award of his appellate costs.  *See* C.A.R. 39(a)(2).

¶ 48    Wife also requests that we award her attorney fees incurred on appeal.  She cites section 14-10-119, C.R.S. 2025, contending that there is a significant disparity in the parties' financial resources.  *See In re Marriage of Alvis*, 2019 COA 97, ¶ 30 (determining that a

23

court may consider the parties' relative financial circumstances when awarding attorney fees pursuant to section 14-10-119). Because it is in a superior position to make this determination, we remand to the district court to determine whether wife is entitled to an award of her appellate attorney fees pursuant to section 14-10-119, and, if so, in what amount. *In re Marriage of Martin*, 2021 COA 101, ¶ 42.

## IV. Disposition

¶ 49 The judgment is affirmed, husband is awarded his costs on appeal, and the case is remanded for further proceedings on wife's request for her appellate attorney fees under section 14-10-119.

CHIEF JUDGE ROMÁN and JUDGE GROVE concur.